**Raymond W. LUCKIE, et ux., et al.,**
**Plaintiffs-Appellants,**

v.

**ENVIRONMENTAL PROTECTION**
**AGENCY, et al.,**
**Defendants-Appellees.**

No. 83–1907.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1984.

Decided Jan. 25, 1985.

Joe P. Sparks, Kevin T. Tehan, Sparks & Siler, P.C., Scottsdale, Ariz., for plaintiffs-appellants.

David O. Ledbetter, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before MERRILL, KENNEDY, and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Appellants ("Residents") appeal from the district court's dismissal of their complaint for lack of jurisdiction and failure to state a claim upon which relief could be granted. Residents' claims against the Environmental Protection Agency ("EPA") were premised upon the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.* (1982), the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6901 *et seq.* (1982), and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* (1982). We affirm in part, and remand in part with instructions.

## I. BACKGROUND

Residents are owners and occupants of certain lots within the Mountain View Mobile Home Subdivision ("Mountain View") situated in Globe, Arizona. Residents purchased their respective lots between the years 1975 and 1978. Located nearby are various asbestos mining and processing facilities, one of which, the Metate Mill, is apparently located inside the boundaries of Mountain View. Mountain View itself is built atop a dumpsite for asbestos tailings (waste left over from the milling process).

In December of 1979, Residents learned from the state of Arizona of the possibility that Mountain View was contaminated. The state applied a covering of topsoil to Residents' yards in an effort to contain the asbestos. In addition, the Metate Mill was dismantled. In early 1980, EPA's Environmental Research Center informed EPA Region Nine that the abandoned Metate Mill presented very high health hazards to Residents, and recommended that Residents' homes be removed and relocated. By the middle of 1980, the protective soil coverings showed signs of erosion, but no action was taken by EPA at that time.

The Administrator of the EPA ("Administrator") was delegated authority under CERCLA.[1] in August of 1981. Residents claim that after this time the EPA ceased providing them with information pertaining to their possible relocation under CERCLA. Residents filed a request under the Freedom of Information Act, which went unanswered. This lawsuit followed in Novem-

---

1. CERCLA contains SUPERFUND, designed to finance clean-up actions. SUPERFUND was enacted on December 11, 1980. President Reagan delegated his authority under SUPERFUND to Administrator Anne Burford on August 14, 1981, through Executive Order No. 12316, 45 Fed.Reg. 42237.

ber of 1981, filed by Residents against the Administrator and various other defendants.

Residents' complaint prayed for various forms of relief, primarily injunctive and declaratory, based upon CAA, RCRA and CERCLA. Pursuant to Fed.R.Civ.Proc. 34, Residents made a request for documents in an effort to substantiate their claims. Arguing that Residents' claims were based upon discretionary duties of the agency and, therefore, not reviewable, EPA moved the court to dismiss the complaint. EPA also moved, pursuant to Fed.R.Civ.Proc. 37, for a protective order to prevent discovery of the requested documents until the motion to dismiss could be ruled upon. Residents countered with a motion to compel discovery, claiming that EPA's motion to dismiss should be treated as a motion for summary judgment, therefore permitting discovery before a response. The district court denied Residents' motion to compel, and in due course granted EPA's motion to dismiss. Residents then brought this appeal.

Subsequently, several events have taken place which change the posture of this lawsuit. First, on May 13, 1983, pursuant to a request by the Administrator, the United States brought an enforcement action against the mill and waste dump owners to abate the hazard at Mountain View. Second, on September 8, 1983, Mountain View was placed on the National Contingency Plan's "National Priority List."[2] Finally, in cooperation with the state government, and under the provisions of CERCLA (SUPERFUND), the EPA has undertaken a comprehensive program at Mountain View which includes permanent removal and relocation of all Residents, purchase of their property at full value, and on-site destruction of their mobile homes. These developments raise the question of mootness.

**2.** The revised National Contingency Plan was promulgated on July 16, 1982, 47 Fed.Reg. 31180, *et seq.* Mountain View was placed on the NCP's National Priority List, promulgated September 8, 1983, 48 Fed.Reg. 50670.

## II. DISCUSSION

■ In dismissing the complaint, the district court carefully considered the many claims alleged by Residents. Because questions of law are involved, we review the district court's decision under the *de novo* standard of review. *United States v. McConney*, 728 F.2d 1195 (9th Cir.1984) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### 1. Emission Standards

Residents challenge EPA's current "no visible emission" standard for asbestos[3] by claiming that it is not quantifiable and, therefore, not a valid emission standard as required by the CAA, 42 U.S.C. § 7412. In so challenging, Residents rely heavily upon *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978).

The district court concluded that the "no visible emission" standard is an emission standard within the meaning of 42 U.S.C. § 7412. Consequently, the district court also concluded that it lacked subject matter jurisdiction. We agree.

■ Claims challenging the validity of standards promulgated by the Administrator "may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1). The Supreme Court in *Adamo* held "that one ... *who is charged with a criminal violation* under the [CAA] may defend on the ground that the 'emission standard' which he is charged with having violated was not an 'emission standard' within the contemplation of Congress when it employed that term." 434 U.S. at 279, 98 S.Ct. at 570, 54 L.Ed.2d at 544 (emphasis added). Furthermore, the Court took great care to limit the holding, warning district courts not to engage in judicial review of that type precluded by section 7607 "under the guise of making a determination as to whether a regulation is

**3.** 40 C.F.R. 61.142 (1984).

an 'emission standard.' " 434 U.S. at 285, 98 S.Ct. at 573, 54 L.Ed.2d at 548. *Adamo* is, without question, inapplicable to the facts at bar, as Residents face no criminal charges. The district court correctly concluded that this claim was improperly before the court and wisely dismissed for lack of subject matter jurisdiction. We affirm as to this issue.

### 2. Statutory Review

Residents' complaint before the district court asserted numerous claims against EPA for violations of CAA, RCRA, and CERCLA in that the Agency allegedly failed to carry out certain "mandatory" duties. Both CAA and RCRA contain a so-called "citizens-suit" provision which allows federal jurisdiction for suits against the Administrator "where there is alleged a failure of the Administrator to perform any act or duty under this [statute] *which is not discretionary* with the Administrator." 42 U.S.C. § 7604(a)(2); 42 U.S.C. § 6972(a)(2). (Emphasis added). CERCLA does not contain such a provision, and much has been made of the legislative history and intent behind this conscious exclusion, as well as the possibility that Congress is now considering an amendment to include some similar provision.

The district court reviewed separately the alleged violations under each act, concluding for the most part that EPA's duties under the specified provisions were discretionary. Therefore, these allegations were dismissed under Fed.R.Civ.P. 12(b)(6). As to the CERCLA claims, the district court also held that there was no cause of action because, *inter alia*, citizens-suits were not allowed. One of Residents' allegations (under RCRA), however, was dismissed because it was not ripe for review. This concerned EPA's alleged failure to regulate asbestos as a hazardous waste, pursuant to a special study which was not yet due at the time of the decision below.

On appeal, residents have placed little reliance on these claimed violations of mandatory duties. They do, however, note that the special study, which was due in October, 1983, has never been issued. For this reason, Residents demand that this count be remanded to the district court.

■ This court's power is limited to the adjudication of actual cases and live controversies. We lack jurisdiction to hear moot cases. We cannot give opinions upon abstract propositions; an actual controversy must exist at all stages of review. *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam); *Trustees For Alaska v. EPA*, 749 F.2d 549, at 554 (9th Cir.1984); *Enrico's, Inc. v. Rice*, 730 F.2d 1250 (9th Cir.1984).

■ To the extent that Residents' claims regarding mandatory duties under the statutes are again being asserted on appeal, we find that they are now moot. For reasons discussed more completely *infra*, there remains no effective relief which we can offer Residents.

### 3. Non-Statutory Review

Residents have also asserted a right to review under provisions outside of the specific allowances of CAA, RCRA, and CERCLA. These contentions have proved to be the heart of Residents' appeal. Simply put, Residents argue that, although the Administrator is granted wide discretion under the statutes, a complete failure to exercise that discretion through some remedial or response action is itself an abuse of discretion. Residents then point to a clause common to both CAA and RCRA which states:

> Nothing in this Section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any ... standard ... or to seek any other relief (including relief against the Administrator or a State agency).

42 U.S.C. § 7604(e); 42 U.S.C. § 6972(f). Relying on this language in CAA and RCRA, and the fact that CERCLA contains no citizens-suit clause, Residents assert that there is jurisdiction independent of the statutes' own provisions with which to review this alleged abuse of discretion. Resi-

dents then state that under the authority of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (1982), this independent jurisdiction is granted by the general federal question statute, 28 U.S.C. § 1331 (1982), the Federal Mandamus and Venue Act, 28 U.S.C. § 1361 (1982) and the Declaratory Judgment Act, 28 U.S.C. § 2201 (1982).

The district court rejected the Mandamus Act, the Declaratory Judgment Act, and section 1331, holding that they did not grant independent jurisdiction. In addition, the court held that the lack of any provision in CERCLA allowing suits against the Administrator precludes a private cause of action to compel EPA to perform its mandatory duties.[4] For its part, EPA has strenuously fought this notion of "nonstatutory" review, but the Agency does concede that jurisdiction is available under the APA to compel performance of CERCLA's *mandatory* duties.[5]

These arguments raise intriguing and complex legal questions which, when combined with the circumstances of Residents' plight, threaten to lure this court down a path it has an obligation not to tread. It is deeply unfortunate that Residents were in need of EPA's help and found EPA unable to respond. However, EPA has since moved, albeit belatedly, to provide for as much or more relief as the Residents had prayed. As we have noted, this relief includes an enforcement action brought against the private defendants, and permanent relocation of the Residents, among other things. Because we simply cannot grant any remaining effective relief, we must find these claims moot.

■ Confronted with these circumstances, Residents further assert that the issues should be decided because they are "capable of repetition, yet evading review."

This test of the mootness doctrine applies when:

(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.

*Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam); *Trustees For Alaska v. EPA,* 749 F.2d 549, at 554 (9th Cir.1984); *Johansen v. San Diego County Dist. Council,* 745 F.2d 1289, 1292 (9th Cir.1984).

Although the "capable of repetition" test is most logically applied in situations where intervening events beyond the control of either party render relief impossible or unnecessary,[6] rather than in instances such as this where it is the defendants' actions which create an issue of mootness, we briefly address Residents' contentions. There is very little chance, much less a "reasonable expectation," that Residents will be subjected to the same action again. For this to occur, Residents would have to be relocated atop another asbestos dump, or similar site, and again be subjected to EPA's regulatory and enforcement scheme. We note as well that this lawsuit is not a class action. A possibility this speculative does not meet the second half of the test, and therefore we need not discuss the remainder.

■ Consideration must also be given to the "voluntary cessation" doctrine, which is a more logical test for mootness in this situation. Ordinarily, voluntary cessation of allegedly illegal conduct does not render a case moot, *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953), unless the defendant can show (1) that there is no reasonable expectation that the alleged violation will

---

4. The district court also held, as noted *supra,* that even if such a private cause of action were recognized, it would not aid Residents, who had raised as error only discretionary duties of the Administrator.

5. EPA agrees with Residents that this is necessary to accomplish the same purposes accomplished by the citizens-suit provisions of CAA and RCRA.

6. *See E.D.F. v. Gorsuch,* 713 F.2d 802, 818–821 (DC Cir.1983) (Wilkey, J., dissenting) (distinguishing between applications of the "voluntary cessation" and the "capable of repetition" tests).

recur,[7] and (2) that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642, 649 (1979). We feel EPA has met its heavy burden under this test.

In addition to our earlier discussion on the unlikelihood of recurrence, we add that most of Mountain View's residents have received and accepted offers for their property at the fair market value before the problem was discovered. Further, in EPA's lawsuit against those allegedly responsible for the contamination, the Agency has been granted a partial summary judgment.[8] Any settlement of the remainder of this enforcement action would require concurrence of the Assistant Attorney General and be preceded by the lodging of the settlement with the court, pending a period of public notice and comment. 28 C.F.R. 50.7 (1984). We conclude that the effects of EPA's violations, as alleged by these Residents, have been completely and irrevocably eradicated, and that there is no reasonable expectation of recurrence. Consequently, Residents' claims are now moot.

4. Discovery Orders

Residents also allege that reversal of the district court is warranted by erroneous rulings on discovery matters. Once again, a treatment of the merits of this issue is fruitless and prohibited. We can give no more effective relief. For the reasons outlined above, this issue is also moot.

Accordingly, the district court's decision is

AFFIRMED in part, and VACATED and REMANDED in part, with instructions that Residents' claims be dismissed as moot.

7. Some circuits, including this one, have said that where the government's actions are those questioned, "the mere probability of recurrence must be coupled with a certainty that the impact will fall on the same objecting litigants." *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1106 (8th Cir.1973); *Accord, Halvonik v. Reagan,* 457 F.2d 311, 313 (9th Cir.1972);

*Committee to Free the Fort Dix 38 v. Collins,* 429 F.2d 807, 812 (3d Cir.1970).

8. The United States District Court for the District of Arizona granted partial summary judgment on April 10, 1984, in *United States v. Metate Asbestos Corp., et al.,* 584 F.Supp. 1143.