UNITED STATES of America,
Plaintiff-Appellant,

v.

ETHYL CORPORATION,
Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellant,

v.

OCCIDENTAL CHEMICAL CORPORATION and Firestone Tire and Rubber Co., Defendants-Appellees.

Nos. 83–3537, 83–3656.

United States Court of Appeals,
Fifth Circuit.

June 3, 1985.

Stanford O. Bardwell, Jr., U.S. Atty., Baton Rouge, La., Anne S. Almy, Robert L. Klarquist, Appellate Section, Ruth McQuade, Environmental Enforcement Section, Land & Nat. Resources Div., U.S. Dept. of Justice, Washington, D.C., R. Gordon Kean, Baton Rouge, La., for plaintiff-appellant.

Richard Marshall Lavers, Baton Rouge, La., Baker and Botts, F. Walter Conrad, Jr., Martin L. McGregor, Houston, Tex., for Ethyl Corp.

Stephen S. Livingston, Carolyn M. Brown, Dallas, Tex., Horace C. Lane, Baton Rouge, La., for Occidental Chemical.

Gary H. Baise, Robert Brager, Washington, D.C., for Firestone.

Before CLARK, Chief Judge, GOLDBERG and RUBIN, Circuit Judges.

GOLDBERG, Circuit Judge:

The United States Environmental Protection Agency ("EPA") instituted these two consolidated civil enforcement proceedings in federal district court, one against appellee Ethyl Corporation, the other against appellees Occidental Chemical Corporation and Firestone Tire and Rubber Company. The EPA sought damages and injunctive relief, claiming that the companies had exceeded the allowable emission levels of vinyl chloride and polyvinyl chloride under the manual vent valve and relief valve regulations published at 40 C.F.R. §§ 61.-64(a)(3), 61.65(a) (1984).[1] The district court ruled that the regulations had been promulgated in excess of the EPA's authority under the Clean Air Act ("Act") § 112, 42 U.S.C. § 7412 (1982), and therefore dismissed the complaints for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Because the district court lacked subject matter jurisdiction to consider the substantive validity of the regulations, we reverse.

In 1970, Congress amended the Clean Air Act to authorize the Administrator of the EPA to promulgate national "emission standards" for hazardous air pollutants.[2]

---

1. The language of § 61.64(a)(3) and § 61.65(a) is identical except as to the substance being discharged ("polyvinyl chloride" versus "vinyl chloride") and the type of valve involved ("manual vent valve" versus "relief valve"). The latter provision states in pertinent part:

 (a) *Relief valve discharge.* Except for an emergency relief discharge, there is to be no discharge to the atmosphere from any relief valve on any equipment in vinyl chloride service. An emergency relief discharge means a discharge which could not have been avoided by taking measures to prevent the discharge. 40 C.F.R. § 61.65(a).

2. As defined in the 1970 amendments, "[t]he term 'hazardous air pollutant' means an air pollutant to which no ambient air quality standard is applicable and which in the judgment of the Administrator may cause, or contribute to, an increase in mortality" or serious disease. Pub.L. No. 91–604, § 112, 84 Stat. 1685 (1970). While the 1977 Clean Air Act Amendments altered that definition, *see* 42 U.S.C. § 7412(a)(1), vinyl chloride and polyvinyl chloride were listed as hazardous air pollutants at the time of appellants' alleged violations between 1977 and 1982, 40 Fed.Reg. 59,477 (1975), and they remain listed as such, 41 Fed.Reg. 46,564 (1977) (codified at 40 C.F.R. § 61.60 (1984)).

Pub.L. No. 91–604, § 112(b)(1)(B), 84 Stat. 1685 (1970) (codified as amended at 42 U.S.C. § 7412(b)(1)(B) (1982)). Section 112 directed the Administrator to publish a list of hazardous air pollutants and to prescribe for each an emission standard affording an ample margin for safety. 42 U.S.C. § 7412(b)(1)(A), (B). Emission standards limit the amount of hazardous air pollutants that can be discharged into the environment. Unlike "work practice standards," emission standards do not tell companies how to discharge—they only say how much. Under the 1970 amendments, the EPA was permitted to promulgate only emission standards, not work practice standards.[3]

As with most congressional delegations of lawmaking by rule, the Act left it to the Administrator to pour content into these relatively broad concepts. The statute was and is clear about one thing, however: an emission standard is subject to judicial review only in the United States Court of Appeals for the District of Columbia, and only if the petition for review is filed within sixty days of the Administrator's action.[4] *Id.* § 7607(b)(1). Given this limited forum for judicial relief, the statute further contains a preclusive review provision, which states that any "[a]ction of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement." *Id.* § 7607(b)(2). In the present case, the Ad-

ministrator's "action" occurred on October 20, 1976, when the vinyl and polyvinyl chloride regulations were promulgated. *See* 41 Fed.Reg. 46,564 (1976).[5] Appellees, however, did not challenge the substantive validity of the regulations until 1983, when they filed their motions to dismiss in the present enforcement actions. At least on its face, then, section 307(b) divested the district court of jurisdiction to pass on the substantive validity of these regulations over five years after they should have been contested, if at all. *Luckie v. EPA,* 752 F.2d 454, 456–57 (9th Cir.1985); *United States v. Borden, Inc.,* 572 F.Supp. 684, 690–91 (D.Mass.1983); *see Lubrizol Corp. v. Train,* 547 F.2d 310, 311–19 (6th Cir. 1976).

Our inquiry might have ended here were it not for the Supreme Court's decision in *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978). In *Adamo Wrecking,* the Court held that, despite the clear language of section 307(b), a criminal defendant charged with violating an EPA emission standard under section 113(c) of the Act, 42 U.S.C. § 7413(c)(1)(C), could challenge the Administrator's designation of the regulation as an emission standard. 434 U.S. at 284–85. Seizing this opening for judicial review, the court below ruled that the vinyl and polyvinyl regulations are emission standards in name only. 576 F.Supp. 80, 86 (M.D.La.1983). In the district court's view, the regulations, rather than merely pre-

---

**3.** In 1977, Congress amended section 112 to authorize the Administrator to dictate the "how" as well as the "how much." The new section 112 authorizes the promulgation of work practice standards where it is "not feasible" to prescribe numerical emissions limitations either because the hazardous pollutant cannot be emitted through a conveyance or cannot be measured. Pub.L. No. 95–95, § 112(e)(1), (2), 92 Stat. 791 (1977) (codified at 42 U.S.C. § 7412(e)(1), (2)). While the Administrator can now promulgate a "design, equipment, work practice or operational standard" as well as an emission standard, work practice standards promulgated prior to the effective date of the 1977 amendments are invalid for being in excess of the Administrator's authority under the Act. *PPG Indus. v. Harrison,* 660 F.2d 628, 636 (5th Cir.1981).

**4.** Prior to the 1977 amendments, this time period was 30 days. *See* Pub.L. No. 91–604, § 307(b)(1), 84 Stat. 1676 (1970) (current version at 42 U.S.C. § 7607(b)(1) (1982)).

**5.** Although the Administrator has recommended revising the vinyl chloride regulations, *see* 50 Fed.Reg. 1182 (1985) (to be codified at 40 C.F.R. pt. 61) (proposed Jan. 9, 1985), the proposed regulations, if adopted, would not affect these enforcement actions. *See, e.g., National Indep. Coal Operators' Ass'n v. Kleppe,* 423 U.S. 388, 393 n. 4, 96 S.Ct. 809, 812 n. 4, 46 L.Ed.2d 580 (1976); *First Nat'l Bank of Lamarque v. Smith,* 610 F.2d 1258, 1262–63 (5th Cir.1980).

scribing a numerical limit for relief valve discharges of vinyl chloride, instead required compliance with specific work practices. The court reasoned that, since the determination of whether a discharge "could not have been avoided" turned on the companies' compliance or noncompliance with certain work practices, the regulation could not fairly be termed an emission standard solely by virtue of its "no discharge" requirement. Since the agency lacked authority to promulgate work practice standards at the time these regulations were promulgated,[6] the district court held the regulations to be invalid and hence dismissed the complaints.

*Adamo Wrecking*, however, does not control this case. To the contrary, the Court rested its holding in *Adamo* on the nature of a criminal prosecution and the attendant unfairness that would result from disallowing a district court to assess the validity of a regulation whose violation would incur the possibility of severe fines and imprisonment. The Court's opinion implicitly acknowledged that, had it not been for the totality of the Act's structure with regard to criminal enforcement proceedings, the clear language of section 307(b) would have compelled a finding that Congress intended to divest the federal courts of jurisdiction over section 112 challenges in all enforcement proceedings, criminal as well as civil. *See Adamo Wrecking*, 434 U.S. at 284, 98 S.Ct. at 572. The Court's *ratio decidendi* was unambiguous:

> *Since Congress chose to attach these stringent [criminal] sanctions to the violation of an emission standard, in contrast to the violation of various other kinds of orders that might be issued by the Administrator, it is crucial to determine whether the Administrator's mere designation of a regulation as an 'emission standard' is conclusive as to its character.*

*Id.* at 283, 98 S.Ct. at 572 (emphasis added). In addition, faced with an admittedly unclear indication of the congressional intent underlying section 307(b)'s preclusive effect in criminal prosecutions, the Court further relied on "the familiar rule that, 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.'" *Id.* at 285, 98 S.Ct. at 572–73 (citations omitted). Neither rationale is applicable in the context of civil proceedings. In light of section 307(b)'s clear language and Congress's manifest intent to avoid protracted and inconsistent adjudications over the validity of EPA emission standards,[7] we would be remiss to allow the

---

6. *See* note 3 *supra.*

7. The Senate Report observed that prompt resolution of certain EPA actions in a single judicial forum was desirable "[b]ecause many of these administrative actions are national in scope and require even and consistent national application." S.Rep. No. 1196, 91st Cong., 2d Sess. 441 (1970); *see also Adamo Wrecking*, 434 U.S. at 284, 98 S.Ct. at 572 (noting § 307(b)(2)'s "twin congressional purposes of insuring that the substantive provisions of the standard would be uniformly applied and interpreted and that the circumstances of its adoption would be quickly reviewed by a single court intimately familiar with administrative procedures"); *Chrysler Corp. v. EPA*, 600 F.2d 904, 910–12 (D.C.Cir. 1979); *Lubrizol Corp. v. Train*, 547 F.2d 310, 311–17 (6th Cir.1976); *Natural Resources Defense Council, Inc. v. EPA*, 512 F.2d 1351, 1353–56 (D.C.Cir.1975); *Granite City Steel Co. v. EPA*, 501 F.2d 925, 926 (7th Cir.1974).

This assessment of congressional intent echoes our recent decision in *RSR Corp. v. Donovan*, 747 F.2d 294 (5th Cir.1984). In *RSR*

*Corp.*, we examined the effect of § 6(f) of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 655(f) (1982), which constitutes the exclusive vehicle for pre-enforcement review of standards promulgated under OSHA, but which does not speak to the preclusive effect of that act on a federal court's jurisdiction to hear regulatory challenges that arise in the context of OSHA enforcement proceedings. We stated that

> when an employer has participated in the rulemaking and pre-enforcement review of an OSHA regulation and could have then asserted either a substantive or procedural challenge to its validity, but did not, and has no excuse for its failure to do so, we will not entertain the challenge in an enforcement proceeding.

747 F.2d at 302. *A fortiori*, to the extent we discerned that Congress intended to foreclose judicial review under the circumstances of *RSR Corp.*, there is little room for doubt regarding congressional intent where, as here, the relevant statute speaks not only to the existence and nature of pre-enforcement review but also to the

narrow holding of *Adamo Wrecking* to bulldoze the statute's jurisdictional limitations in civil enforcement proceedings.[8] *Cf. Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (upholding previous attempt by Congress, in the context of criminal enforcement proceedings, to require that the validity of regulatory action be challenged in a particular court at a particular time).

Moreover, even if *Adamo Wrecking* were applicable to the case at hand, we would at most be allowed to inquire whether the regulations constitute emission standards on their face.[9] Assuming for the moment that this limited inquiry is warranted, we take heed of the Court's cautionary words in *Adamo Wrecking*:

> We are aware of the possible dangers that flow from this interpretation; district courts will be importuned, under the guise of making a determination as to whether a regulation is an "emission standard," to engage in judicial review in a manner that is precluded by § 307(b)(2) of the Act. This they may not do. The narrow inquiry to be addressed by the court in a criminal prosecution is not whether the Administrator has complied with appropriate procedures in promulgating the regulation in question, or

whether the particular regulation is arbitrary, capricious, or supported by the administrative record. Nor is the court to pursue any of the other familiar inquiries which arise in the course of an administrative review proceeding. The question is only whether the regulation which the defendant is alleged to have violated is on its face an "emission standard" within the broad limits of the congressional meaning of that term.

434 U.S. at 285, 98 S.Ct. at 573. In answering this question, we have no trouble labeling the regulations as emission rather than work practice standards since each sets a "no discharge" cap on the amount of vinyl chloride and polyvinyl chloride that can be emitted. Where the regulations can be violated only by transgressions of this purely numerical discharge requirement, it cannot be said that the regulations are not on their face emission standards, or, more to the point, that the Administrator's characterization of them as such is unreasonable, *see, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, ── U.S. ──, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 121, 93 S.Ct. 2080, 2095, 36

non-existence of enforcement-*cum*-review. *Compare, e.g., Shell Oil Co. v. FERC*, 707 F.2d 230, 235 (5th Cir.1983) ("Anyone aggrieved by a rule established in a rulemaking must challenge it within the prescribed appeal period or forever hold his peace.") *with Texas v. United States*, 749 F.2d 1144, 1146–47 (5th Cir.1985) (construing 60-day provision for judicial review in Administrative Orders Review Act of 1950 ("Hobbs Act"), 28 U.S.C. § 2344 (1982), not to preclude all substantive challenges to rule's validity when the rule is later applied).

**8.** Concurring in *Adamo Wrecking*, Justice Powell expressed concern over the due process implications of section 307(b)'s jurisdictional limitations, at least in the context of a criminal prosecution. 434 U.S. at 289–91, 98 S.Ct. at 575–76 (Powell, J., concurring); *see also id.* at 293 n.*, 98 S.Ct. at 577 n.* (Stewart, J., dissenting). Like the Court in *Adamo Wrecking*, we are not presented with any challenge based on the due process theory that section 307(b) affords interested parties inadequate notice. *See Harrison v. PPG Indus.*, 446 U.S. 578, 592 n. 9, 100 S.Ct. 1889, 1897 n.9, 64 L.Ed.2d 525 (1980);

*id.* at 594, 100 S.Ct. at 1898 (Powell, J., concurring). Appellees have not raised the issue, and indeed they would probably lack standing to do so, since each of the three companies was on actual notice and participated in the comment proceedings that accompanied the promulgation of these regulations. *Cf. Natural Resources Defense Council, Inc. v. EPA*, 673 F.2d 400, 406–07 (D.C.Cir.), *cert. denied*, 459 U.S. 879, 103 S.Ct. 175, 74 L.Ed.2d 143 (1982).

**9.** Where appropriate, such inquiries often entangle courts in the somewhat paradoxical endeavor of considering the merits of a dispute—for instance, whether a regulation is substantively valid as an emission standard or invalid as a work practice standard—in order to ascertain whether jurisdiction over the dispute exists in the first place. This intertwining of substantive and jurisdictional issues, however, is not an uncommon feature of answering the jurisdictional question. *See, e.g., E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 125, 97 S.Ct. 965, 973, 51 L.Ed.2d 204 (1977); *Louisiana Chemical Ass'n v. Bingham*, 657 F.2d 777, 782 & n. 7 (5th Cir.1981).

L.Ed.2d 772 (1973); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *PPG Industries v. Harrison,* 660 F.2d 628, 633 (5th Cir.1981). *Accord Luckie,* 752 F.2d at 456–57; *Borden,* 572 F.Supp. at 691.

Thus, to the extent section 307(b) requires us to determine as a preliminary matter whether these EPA regulations are emission standards, we hold for purposes of that jurisdictional inquiry that they are. The district court was consequently without jurisdiction to pass on the substantive validity of sections 61.64(a)(3) and 61.65(a) under the Clean Air Act, and the government, *qua* cleaner, may press its suit.

REVERSED AND REMANDED.