**UNITED STATES of America**

v.

**The DOW CHEMICAL COMPANY.**

**Civ. A. No. 85–294–A.**

United States District Court,
M.D. Louisiana.

Sept. 22, 1988.

P. Raymond Lamonica, U.S. Atty., M.D. La., Edward J. Gonzales, Asst. U.S. Atty., Baton Rouge, La., Cynthia Irmer, U.S. Dept. of Justice, Environmental Enforcement Section, Land & Natural Resources Div., Washington, D.C., William J. Guste, Jr., Atty. Gen. for State of La., William G. Davis, Asst. Atty. Gen., Dept. of Justice, Baton Rouge, La., for plaintiff.

R. Dean Cooper, Plaquemine, La., Robert Brager, Charles F. Gauvin, Beveridge & Diamond, P.C., Washington, D.C., for defendant.

234

## RULING ON MOTIONS

JOHN V. PARKER, Chief Judge.

This action is one of a series of ongoing disputes between the Environmental Protection Agency and local chemical plants which pay taxes, provide employment, and otherwise contribute to the local economy, but which also produce vinyl chloride, a hazardous air pollutant. A "hazardous air pollutant" is defined by Section 112(a)(1) of the Clean Air Act, 42 U.S.C. § 7412(a)(1) as "an air pollutant ... which ... causes, or contributes to, air pollution which may reasonably be anticipated to result in an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness." EPA listed vinyl chloride as a hazardous air pollutant on December 24, 1975. 40 Fed.Reg. 59477. Dow Chemical has a vinyl chloride plant, known as the Vinyl II plant, from which EPA claims non-authorized releases of vinyl chloride have occurred and about which EPA claims timely release reports were not filed.

The present issues before the court are the motion of defendant for summary judgment and the motion by the government to vacate a previous order staying discovery. Opposition has been filed on both sides and the court has heard oral argument on the motions. The court has considered the matter at great length—actually for much too long a period—for which apology is hereby tendered to all parties.

Subject matter jurisdiction is vested in this court pursuant to Section 113(b) of the Clean Air Act and pursuant to 28 U.S.C. §§ 1331, 1345 and 1355.

Dow claims that it is entitled to summary judgment in its favor because: (1) 40 C.F.R. § 61.65(a), the regulation at issue, and its regulatory history demonstrate that relief valve discharges to a flare are not prohibited by that regulation; (2) that discharges from relief valves to a flare are not discharges "to the atmosphere" within the meaning of § 61.65(a); and (3) that to the extent that trace emissions from the flare to the atmosphere are deemed to be to the atmosphere from relief valves, such emissions emanate from equipment that is not in vinyl chloride service. The government opposes on all counts.

We take the following description of vinyl chloride plants from Dow's brief at page 13.

"All VCM plants are continuous systems in which VCM is created at the beginning of the process and stored towards the end of that process. First, vinyl chloride is created in equipment that is designed for vinyl chloride formation; VCM emissions from such equipment are regulated by 40 C.F.R. § 61.63(a). The VCM produced then typically flows to compressors (with emissions regulated by § 61.65(b)(3)(IV)), to equipment that purifies the VCM (with emissions regulated by § 61.63(a)), and through loading lines (with emissions regulated by § 61.65(b)(1)), rotating pumps (with emissions regulated by § 61.65(b)(3)(I)), and into a storage tank."

The regulation, 40 C.F.R. § 61.65(a), relating to relief valve discharges reads as follows:

"(a) **Relief Valve Discharge.** Except for an emergency relief discharge, there is to be no discharge to the atmosphere from any relief valve on any equipment in vinyl chloride service."

Section 61.65(b) regulates "fugitive emission sources" such as loading and unloading lines, slip gauges, leakage from pumps, compressors and agitator seals and Subsection 4 provides:

**Leakage From Relief Valves.** Vinyl chloride emissions due to leakage from each relief valve on equipment in vinyl chloride service are to be minimized by installing a rupture disc between the equipment and the relief valve, by connecting the relief valve discharge to a process line or recovery system, or equivalent as provided in § 61.66.

It is undisputed that in January 1978, Dow applied to EPA for an equivalency determination under § 61.65(b)(4) which would allow it to eliminate the rupture discs otherwise called for by the regulation:

All relief valves in vinyl chloride service ... are tied into a header system which goes to a continuously operating,

smokeless flare. No rupture discs ahead of the valves exist. A request for an equivalency determination is made, which will allow the substitution of the header/flare system for rupture discs ahead of the safety valves. This header/flare system is felt to effectively burn all vinyl chloride that **leaks from the safety valves**.... (emphasis supplied)

It is undisputed that EPA granted Dow's request for an equivalency determination, specifically noting agency "approval to use a collection/flare system on the discharge of relief valves in vinyl chloride service as being equivalent to the required rupture disc of § 61.65(b)(4)." The agency further specifically noted "the approval of this equipment equivalency in no way constitutes approval of your flare system as a control device."

It is also undisputed that by letter dated July 20, 1978, EPA requested Dow to supply information regarding current and future use of flares as a control device for compliance with emission limitations. By letter dated August 4, 1978 Dow replied:

The Vinyl Plant does not use a flare as a control device; therefore, there is no performance data available.

However, in our Initial Report, dated January 5, 1978, we requested an equivalency for the use of a flare in lieu of rupture discs ahead of relief valves. We presently have our process relief valves (without rupture discs) in vinyl chloride service connected to a header system with a flare. We believe that this system is safer and more efficient than the rupture disc/relief valve assembly required by the standard.

In the event it is not already clear, § 61.65(a) on relief valve **discharges** and § 61.65(b)(4) regulating **leaks** from relief valves cover two entirely different situations. Dow presented its use of the flare to EPA as a method of minimizing leaks from relief valves under § 61.65(b)(4), not as a control device for preventing discharges into the atmosphere from relief valves under § 61.65(a). The agency accepted it only under § 61.65(b)(4) and in response to a specific inquiry Dow re-

affirmed that the flare was used only for leaks and not as a control device.

It is apparent now that Dow has been routing all relief valve discharges to the flare where, Dow claims, 99.3 per cent of the vinyl chloride is destroyed before being discharged to the atmosphere. That amounts to using it as a control device under § 61.65(a).

The agency asserts, and Dow does not deny, that most vinyl chloride plants prevent relief valve discharges to the atmosphere by routing the discharge from the relief valve to a storage vessel or a vessel which routes it back into the process stream. The Standard Support and Environmental Impact Statement ("SSEIS") issued by the agency in connection with the then proposed regulation reads:

All pressure vessels in ethylene dichloride-vinyl and polyvinyl chloride plants must be equipped with safety discharge valves which are designed to relieve the pressure from the vessel in case of an operating upset. Because of their design characteristics these valves are more apt to leak than gate or plug valves. Also, if the valve is unseated by over pressure, it may not reseat properly and a large leak may result. These leaks are difficult to detect because the valve discharge is usually elevated and not readily accessible for detection with a portable sniffer. This emission can be prevented by installing a rupture disk between the vessel and the safety valve with a pressure gauge between the valve and rupture disk. Any pressure buildup between the disk and the valve will indicate rupture disk failure which can be replaced. Rupture disks used for this purpose are designed to burst at a fixed pressure. If the disk does leak the pressure gauge will indicate this and the disk can be changed before the safety valve unseats. If the rupture disk is blown out by high pressure the safety valve will reseat after the pressure has returned to a safe level and prevent the entire loss (to atmosphere) of the vessel contents. **Vinyl chloride emissions resulting from excessive pressure can be controlled by**

**connecting the relief valve discharge to a flare or other control device....** (emphasis supplied)

Dow argues that by publishing the emphasized language, the agency recognizes that § 61.65(a) regulating discharges from relief valves to the atmosphere does not prohibit the discharge of vinyl chloride from relief valves to the flare with the unburned residue going to the atmosphere.

Dow also points to other language in the SSEIS indicating agency approval for the use of flares such as, "A flare can and is being used to combust small vinyl chloride streams or intermittant emissions such as would occur during a plant upset," as well as to a chart of "control techniques" published by the agency which lists:

| Emission Source | Applicable Control Techniques |
|---|---|
| Safety Relief Valve | Rupture Discs |
| Leaks & Discharges | Flare |

All of this, Dow argues, demonstrates that the use of a flare as a control device is not prohibited by § 61.65(a).

The position advanced by Dow now is to use the flare/header system as a control device for discharges from the relief valves which occur during plant upsets, etc. Dow asserts that the flare effectively burns 99.3% of all vinyl chloride which is vented to it, assuming a 100% concentration of vinyl chloride. The government asserts that it has no basis in fact for acknowledging the accuracy of Dow's claims.

Dow's best argument is the common sense one that vinyl chloride is vinyl chloride without regard to its source and if the regulations permit (as they do) the venting of up to a 2% solution of vinyl chloride to the atmosphere when opening and cleaning a storage tank, then these "trace emissions" from the flare should also be permitted.

■ The government responds that it construes § 61.65(a) to prohibit all—one hundred percent of—vinyl chloride discharges to the atmosphere, except in emergencies such as hurricane, flood, or tornado. Dow asserts that this construction should be rejected by the court on a common sense basis. The court is pursuaded

that the regulation means what it says, "... there is to be no discharge to the atmosphere from any relief valve in vinyl chloride service." "No discharge" means zero.

The court agrees with Dow (and the government concedes) that the regulation does not prohibit the use of a flare as a control device. A flare may certainly be used as such, provided it destroys all vinyl chloride so that there is "no discharge to the atmosphere."

■ There does seem to be some inconsistency in the regulations which permit **some** emissions from "fugitive emission sources"—loading and unloading lines, slip gauges, pumps and other equipment, and storage tanks, but this court has no jurisdiction to review the regulations or to entertain any attack upon them. In *United States v. Ethyl Corp.*, 761 F.2d 1153 (5th Cir.1985), the Court of Appeals reversed this court on that very point and held that the district courts are without jurisdiction to entertain any attack upon the substantive or procedural validity of the regulation. It is also plain that the interpretation of the regulation advanced by the EPA does not constitute "final action" by the Administrator under 42 U.S.C. § 7606(b), thus triggering judicial review; this regulation is fully in effect and this court's authority is limited to a review of the administrative construction. See *Dow Chemical Co. v. U.S. E.P.A.*, 832 F.2d 319 (5th Cir. 1987).

The government correctly points out that our review in this case is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Under that statute an administrative agency's action may be held unlawful and set aside only if it is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

The government also points out correctly that we are not construing a statute; on the contrary, we are construing administrative regulations promulgated by the Administrator of the Environmental Protection Agency. When a court construes an administrative agency's interpretation of

its own regulations, that interpretation becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700. See also, *Brock v. Schwarz–Jordan,* 777 F.2d 195 (5th Cir. 1985).

It is correct that the agency's regulations allow emissions from particular sources and that the permitted emissions vary from source to source. EPA claims that regulation 61.65(a) absolutely prohibits all discharges of any amount of vinyl chloride to the atmosphere from relief valves. The government concedes that the regulations do not prohibit the use of the flare by Dow but argues that it can be used as a control device for discharges from relief valves only if it destroys 100% of the vinyl chloride and, since Dow concedes that it burns only 99.3% that the flare permits "substantial concentrations of vinyl chloride" to enter the atmosphere.

This court cannot conclude that EPA's construction of its own regulation is plainly erroneous or inconsistent with the regulation. It is certainly clear that the agency has never approved this flare for use as a control device for discharges from relief valves. The device was approved strictly as an equivalency to pressure discs to reduce leaks from pressure valves and it is also clear that a leak from a pressure valve is an altogether different matter than a pressure valve discharge.

Dow's other arguments, that these discharges from the pressure relief valves to the flare, thence to the atmosphere are not "to the atmosphere," and that the "trace amounts" of vinyl chloride are not from equipment "in vinyl chloride service," are not persuasive.

Accordingly, the court concludes that the agency's interpretation of its own regulation is correct and that if this flare permits any amount of vinyl chloride to be discharged to the atmosphere, each such discharge constitutes a violation of § 61.65(a). Accordingly, the motion for summary judgment on behalf of Dow is hereby DENIED.

The motion to vacate the stay order staying discovery in the case is hereby granted to the extent that the government desires to discover facts regarding the efficiency of the flare operation.