In re Ronald Frederick POPP, Debtor.

Rodney F. Darby, Appellant,

v.

P.J. Zimmerman, Chapter
7 Trustee, Appellee.

BAP No. CC–04–1071–MkMaMo.
Bankruptcy No. RS 01–27670 DN.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on Nov. 18,
2004 at Pasadena, California.

Filed—Feb. 24, 2005.

Elizabeth A. LaRocque, Goe & Forsythe, LLP, Newport Beach, CA, for Rodney Darby.

Wayne E. Johnson, Redlands, CA, for P.J. Zimmerman, Ch. 7 Trustee.

Before: MARKELL [1], MARLAR and MONTALI, Bankruptcy Judges.

## OPINION

MARKELL, Bankruptcy Judge.

## INTRODUCTION

Appellant Rodney Darby ("Darby") appeals from two bankruptcy court orders authorizing the sale of a 4.88 acre parcel of unimproved real property in Riverside County, California (the "Property"). The first order granted the Trustee's "Motion to Sell Real Property Under Section 363(f)" (the "Sale Motion"). The second denied Darby's "Motion for Reconsideration of the Sale Order" (the "Motion for Reconsideration").

Darby argues that both orders were error under *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603 (9th Cir.2004), because the trial court did not make sufficient findings that the estate had an interest in the Property that could be sold under Section 363.[2] Appellee P.J. Zimmerman, the chapter 7 trustee ("Trustee"), contends that the sale was proper under *Rodeo*. She also maintains that this Court does not have jurisdiction over Darby's appeal because Darby lacks standing, and that since the sale has already been consummated, the matter is moot.

We reverse.

## FACTS

Darby holds a deed of trust on the Property recorded on October 4, 1995 (the "Deed of Trust"). The original debt secured by the Deed of Trust was stated as $20,000, which, with interest, had grown to $37,592.65 by the time the Trustee filed the Sale Motion.

The parties dispute title to the Property. Before the 1990s, the debtor in this case, Ronald Popp ("Popp"), had a 50% interest in the Property. From that point of seeming clarity, however, a chain of events and

---

**1.** Honorable Bruce A. Markell, Bankruptcy Judge for the District of Nevada, sitting by designation.

**2.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

transactions began that has all the hallmarks of a crude, yet complex, shell game.[3]

The first relevant transfer occurred in May of 1995, when Popp and the other co-owners of the Property conveyed it to Investors Co–Op, a general partnership ("IC"). The partners in IC were Popp's father, Fred Popp (who died in February 1999), and Popp's girlfriend of 15 to 20 years, Deborah Turner ("Turner").

The next transfer occurred five months later, on October 2, 1995, when IC entered into a contract for deed to sell the Property to Darby[4] for $40,000. Of this amount, Darby was to pay half at the time of contracting, with the remainder due "on or before" October 2, 1997. Darby's deposit was refundable if Darby did not complete the sale. To secure IC's contingent obligation to pay Darby an amount equal to the deposit, IC gave Darby a promissory note for $20,000, and secured it with the Deed of Trust.

Finally, on February 3, 1997, Darby signed yet another contract conveying his interest in the Property back to IC. This transfer was accomplished by quit claim deed subject to the Deed of Trust. The terms of this contract provided that interest would accrue on the amount secured by the Deed of Trust at an annual rate of 10%.[5]

Although Popp is not listed as a partner in IC's partnership agreement, that agreement gave him authority to sign binding contracts for IC. Indeed, Popp's signature purports to bind IC in all of the above transactions, except for the October, 1995 promissory note to Darby, which was executed by Turner on IC's behalf.[6]

In late 2001, Popp filed bankruptcy. On May 28, 2002, the Trustee filed an adversary proceeding seeking, among other remedies, a declaratory judgment that IC was an alter ego of Popp ("Alter Ego Adversary"). Popp, Turner, the estate of Popp's father, Popp's mother and IC were all named defendants.

The third cause of action in the Alter Ego Adversary sought a declaration that the Property was property of Popp's bank-

---

**3.** Popp supplied a narrative of the changes in ownership of the Property. It states:

> 50% of this land was purchased by me, somewhere maybe in the 1970's. [¶] In 1995 both the other 50% owners and myself transferred the property to Investors Co–Op a general Partnership. [¶] At this time we were not paid for the purchase. The property was then sold by a contract for deed sale. A trust deed was recorded for $20,000 against the property. [¶] The Partnership Deborah Turner and Fred Popp. [*sic*] The sales contract was to Rodney F. Darby. [¶] The Partnerships [*sic*] interest in the sales contract was assigned to Worthmore in 1997.[¶] In 1998 the other 50% original owners were paid off by Worthmore. [¶] Leaving a contract to sell still in effect and a $20,000.00 trust Deed [*sic*] recorded against the property. [¶] When the contract is completed the deed will have to be recorded to the new owner or Worthmore if the sale is not completed.

Given the confusing nature of this explanation, we attempt in the body of the Opinion to sort out the transfers with more precision.

**4.** Popp and his family have known Darby since Popp was a child.

**5.** In addition to the above convoluted facts, at least two entities involved in these transactions have registered the name "Investors Co–Op" as a fictitious business name. On May 12, 1995, Fred Popp and Deborah Turner registered the name for IC, and on October 3, 1995, Popp registered the name for himself. Both registrations contain the same address.

**6.** There is also some evidence that during all of these transactions little or no money changed hands. Since 1997, when Darby executed the quit claim deed conveying his interest in the Property back to IC, Darby has received neither interest nor principal payments, nor has he taken action to enforce his right to receive them.

ruptcy estate. It also sought an injunction against IC's further transfer of the Property. After a hearing, the court granted this request and entered a preliminary injunction against all defendants—including the record title holder, IC—prohibiting them from any sale or transfer of the Property.

In October 2003, before the Alter Ego Adversary was concluded, the Trustee filed the Sale Motion, which requested authority to sell the Property for $22,500. Essential to that motion was a finding that the Property belonged to Popp's bankruptcy estate. The Sale Motion thus constituted a proceeding parallel to, and in many respects duplicative of, the Alter Ego Adversary.

Darby, Popp, and Turner each opposed the Sale Motion. In particular, Darby objected on the grounds that the estate lacked title to the Property, and that the Property could not be sold free of his interest without paying him in full. The court overruled all objections and granted the Sale Motion on December 3, 2003 (the "Sale Order"). Although the court had before it the convoluted evidence sketched above, the full extent of the court's findings on ownership was that Popp's estate had "some interest in the property." [7]

Darby did not seek a stay of the Sale Order. The sale to the purchaser, Nancy R. Redding ("Redding"), was consummated, and the grant deed was recorded on December 23, 2003.[8]

On December 15, 2003, Darby filed the Motion for Reconsideration. The court heard this motion after recordation of the deed, and on January 26, 2004, the bankruptcy court denied it ("Reconsideration Order"). At that time, the bankruptcy court took evidence of Redding's good faith, and found that she was a good faith purchaser within the meaning of Section 363(m). Darby filed a Notice of Appeal from the Reconsideration Order on February 5, 2004.[9] Redding is not a party to this appeal.

At oral argument, the parties informed the Panel that the Alter Ego Adversary was still pending, and that after the sale order was entered the trustee had added Darby to the list of defendants who she alleged were alter egos of Popp.

## ISSUES

1. Does Darby lack standing to object to the sale because he is a lien holder and not an owner of the Property?

2. Was the maintenance of parallel proceedings, each seeking a determination that the estate had an interest in the Property, impermissible under *Rodeo?*

3. If the bankruptcy court improperly countenanced parallel proceedings, what, if any, remedy is appropriate and within this court's jurisdiction to grant?

---

7. At best, the evidence submitted to the bankruptcy court regarding ownership was equivocal.

8. In light of the Trustee's disclaimers as to the warranty of title explored *infra*, we think the grant deed was more akin to a quit claim deed.

9. Darby's Notice of Appeal refers only to the Motion for Reconsideration; however, the Appellant's Opening Brief makes it clear that Darby's appeal encompasses the bankruptcy court's Sale Order as well. In similar situations, the Ninth Circuit has held that "[u]nless the opposing party can show prejudice, courts of appeal may treat an appeal from a post-judgment order as an appeal from the final judgment." *Ward v. San Diego County,* 791 F.2d 1329, 1331 (9th Cir.1986) (citing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). This line of cases negates the Trustee's argument regarding Darby's failure to appeal directly from the Sale Order.

## STANDARD OF REVIEW

■ This court reviews "appeals from orders to sell property of the estate other than in the ordinary course of business pursuant to 11 U.S.C. § 363(b) for abuse of discretion." *Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 422 (9th Cir. BAP1988) (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir.1983); *Big Shanty Land Corp. v. Comer Props., Inc.*, 61 B.R. 272, 277 (N.D.Ga.1985)). A court abuses its discretion if " 'it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact.' " *United States v. Sprague*, 135 F.3d 1301, 1304 (9th Cir.1998) (citation omitted). The reversal of an order for abuse of discretion requires "a definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon weighing the relevant factors." *Stine v. Flynn (In re Stine)*, 254 B.R. 244, 248 (9th Cir. BAP 2000) (citing *In re Cortez*, 191 B.R. 174, 177 (9th Cir. BAP 1995)). Similarly, this court will not reverse a finding of fact unless it is clearly erroneous. *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. BAP 1989).

## DISCUSSION

### Standing

The Trustee claims that Darby, as a lien holder, does not have standing to appeal the Sale Order. Darby responds that the Sale Order had the type of direct and adverse pecuniary effect on him that is sufficient to give him standing. We agree with Darby.

■ "To have standing to appeal a decision of the bankruptcy court, an appellant must show that it is a 'person aggrieved' who was 'directly and adversely affected pecuniarily by an order of the bankruptcy court.' " *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 670 (9th Cir.1998) (citing *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442–43 (9th Cir.1983); *Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673, 675 (9th Cir.1996)). A "person aggrieved" is someone whose interest is directly affected by the bankruptcy court's order, either by a diminution in property, an increase in the burdens on the property, or some other detrimental effect on the rights of ownership inherent in the property. *In re Fondiller*, 707 F.2d at 442–43.

■ Darby does not claim a fee interest or any residual ownership in the Property. Instead, he has a lien on the Property in the form of the Deed of Trust. The Trustee believes that this lesser property interest is insufficient to allow Darby to challenge the Trustee's proposed sale. We disagree.

It is instructive to examine the circumstances in which the Code and case law permit creditors and lien holders to object to a sale under Section 363 of the Code. With respect to creditors, case law permits any creditor to challenge transfers because of the estate's lack of the power to sell. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 (9th Cir.1999). With respect to lien holders, the Code supplements the list of challenges by allowing a secured creditor to object to a sale free and clear unless that secured creditor's claim is paid in full. 11 U.S.C. § 363(f)(3).

Darby's objection in the trial court included an objection that the Trustee did not own the Property, and that Darby's claim was not proposed to be paid in full. On appeal, however, Darby has not renewed his objection under Section

363(f)(3). Seizing on this omission, the Trustee essentially argues that Section 363(f) constitutes an exclusive list of possible objections to a sale under Section 363.

We do not agree. Initially, we note that Section 363(f) does not provide an exclusive set of objections. Indeed, even before one gets to Section 363(f), Section 363(b), as interpreted by *Rodeo,* requires that the estate demonstrate that the property it proposes to sell is "property of the estate." Darby's objection thus rests at this fundamental level, and we read Ninth Circuit law to permit even unsecured creditors to challenge proposed sales on this ground.

*P.R.T.C.* demonstrates this point. There, a chapter 7 trustee had sold avoiding-powers actions to a trust, with the understanding that the trust, and not the trustee, would pursue the litigation. When sued by that trust, a defendant raised the issue that, unlike chapter 11, nothing in chapter 7 authorized such a sale. The trustee countered that the litigation defendant did not have standing to raise that issue.

The Ninth Circuit rejected the challenge. After discussing *Fondiller,* which we cite above, the court noted that "[a] creditor does ... have a direct pecuniary interest in a bankruptcy court's order transferring assets of the estate." 177 F.3d at 778. The creditor's pecuniary interest arises from the fact that, by the sale, the mix of assets held by the estate from which to pay creditors is irrevocably altered. In this sense, *P.R.T.C.* presents a weaker standing claim than that present here: *P.R.T.C.* recognized standing to challenge a sale based on the expectations of an *unsecured* creditor. In the current case, Darby's status is stronger. As an undersecured creditor, he possesses both

secured and unsecured claims. 11 U.S.C. § 506(a).

Given this discussion, there are two consequences that flow from the sale proposed here that cement Darby's standing. First, the sales price established that Darby has an unsecured deficiency claim along with his secured claim. *See* 11 U.S.C. § 506(a). Under *P.R.T.C.,* that unsecured claim gives him standing to challenge the sale.

If Darby's unsecured claim bestows standing, it would be odd if the Trustee's attempt to strip Darby's lien from the Property did not achieve the same result. Seeking to avoid inconsistency, we hold that the sale and lien stripping in this case also confers standing. Section 363(f)(3) recognizes that a lien holder has an interest in a sale of its collateral, and can successfully oppose the sale if the proceeds do not pay the full amount of debt secured by the property being sold. While Darby did not specifically cite Section 363(f)(3) on appeal, the same interest is encompassed and inherent in the argument he does make: that the estate does not own his collateral. Indeed, *Rodeo* requires that the Trustee establish that the property to be sold is "property of the estate" before invoking Section 363(f)'s extraordinary power to strip liens. As a result, the necessary pecuniary interest for standing is present when a proposed Section 363 lien stripping diminishes, burdens, or otherwise alters a lien holder's state law property rights. *In re Fondiller,* 707 F.2d at 442–43.

The sale and lien stripping here certainly affected Darby's state law property rights in a way contemplated by *Fondiller's* standing analysis.[10] This is best seen from the perspective of the sale as one

---

**10.** We do not address the issue of Darby's standing had the sale been subject to Darby's lien.

"free and clear" of Darby's lien. Such a sale necessarily resulted in a change in Darby's collateral. Before the sale, his security was real estate. After the sale, it was cash, and less cash than Darby's debt. Among the consequences of this change was Darby's loss of his nonbankruptcy right to delay foreclosure until real property prices rose. This transformation of collateral and change in foreclosure rights establish Darby's status as a "person aggrieved" under *Fondiller* and similar cases, especially since he was undersecured at the time the court ordered his lien stripped. *Cf.* 11 U.S.C. § 1111(b) (preserving nonrecourse creditor's right to look to property appreciation for repayment).[11]

The Trustee responds by noting that the Property had been on the market for eighteen months and that the sale price was the best possible result for all concerned. Therefore, the Trustee argues, land values and Darby's failure to ask for loan payments, not the Sale Order, caused any loss. This practical argument succeeds only if the value of the Property is static, and if the Trustee had used available legal theories under Section 502(d) and Rule 3012 to value Darby's interest in the Property, thus quantifying the extent of Darby's se-

cured claim. *See In re Canonigo,* 276 B.R. 257 (Bankr.N.D.Cal.2002). Darby could prefer an investment in real estate to a cash investment, and the Sale Order affected his interest in the Property by involuntarily depriving him of that choice.

Darby also successfully distinguishes the only two cases cited by the Trustee for the proposition that lien holders do not have standing to dispute ownership. The first, *Cassirer v. Sterling Nat'l Bank & Trust (In re Schick),* 246 B.R. 41, 46 (Bankr. S.D.N.Y.2000), holds that strangers who will not benefit from a constructive trust do not have standing to sue to impose one. The second, *Tilley v. Vucurevich (In re Pecan Groves),* 951 F.2d 242, 245 (9th Cir. 1991), rules that creditors have no standing to object to a violation of an automatic stay, because the automatic stay "is intended solely to benefit the debtor estate." As Darby points out, neither case is directly applicable to the question of whether a lien holder has standing to object to an unauthorized sale of the property that serves as collateral for his lien.

Darby has thus established that he is an "aggrieved party" under *Fondiller* and *P.R.T.C.* and therefore has standing.[12]

11. The dissent questions the use of Section 1111(b) in this chapter 7 liquidation case. Indeed, given that Popp's obligations secured by the Deed of Trust are recourse obligations, Section 1111(b) would be of little use even if Popp's case were filed under chapter 11. As the *"cf."* signal indicates, however, we cite Section 1111(b) only to show that the interest of a lien holder in any future appreciation of its collateral is an interest recognized elsewhere in the Code. *See, e.g., Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774 (9th Cir.1999) (finding that, notwithstanding absence of statutory authority, court had power to authorize chapter 7 trustee to transfer avoiding-powers actions to litigation trust; creditor sued by trust had standing to challenge transfer of estate assets,

and thus had standing to challenge transfer of estate's causes of action).

12. The dissent's position that Darby lacks standing has odd consequences. Consider, for example, a hypothetical chapter 7 filing by a business which stores towed and seized cars. Assume that the trustee takes the position that possession of the stowed cars gives her the ability to sell the cars free and clear of any liens. She then notices a sale of all such cars, and for whatever reason, the cars' owners do not object (they could have abandoned them because they believe the liens against them left no equity). It would blink reality to say that the banks and credit unions who lent money on the cars would lack standing to object to the sale on the basis of a lack of

### Is the Property Part of Popp's Estate?

Darby argues that both the Sale Order and the Reconsideration Order were an abuse of discretion under *Rodeo* because the Property had not been finally determined to be the property of Popp's bankruptcy estate. In response, the Trustee maintains that the orders were not abuses of discretion because the bankruptcy court found that Popp had "some interest in the property," and that finding was supported by sufficient evidence. We disagree with the Trustee.

In *Rodeo*, the Ninth Circuit considered the sale of real property that was the subject of an ownership dispute. *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 605–06 (9th Cir.2004). The debtor there had record title to the property being sold, which under California law created a rebuttable presumption that it held at least equitable ownership. *Rodeo*, 362 F.3d at 608 (citing Cal. Evid. Code § 662). The appellant, however, claimed that the equitable owner of the property was a partnership in which the appellant and the debtors were the two general partners because the property had been acquired using that partnership's funds. *Id.* at 605–06.

To resolve the ownership issue, an adversary proceeding had started before the sale. But before issuing a dispositive motion or holding trial in the adversary proceeding, the bankruptcy court allowed the sale of the property under Section 363. The appellant moved for reconsideration, contending that while it did not object to the sale generally, it did object to any distribution of the sale proceeds to satisfy interests or liens that were already in dispute in the pending adversary proceeding. The trial court overruled the objection and ordered a distribution based on an as-sumed minimum ownership interest by the debtor. It did this, however, without entering any order in the pending adversary proceeding.

Adopting a rule designed to discourage piecemeal litigation, the Ninth Circuit ruled that "[a] bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property" and found that the trial court had not done so. *Id.* at 608–09. The court first noted the bankruptcy court's order "purported to find the [p]roperty to be 'property of [Rodeo's] estate.'" But the court found this "irreconcilable with [the bankruptcy court's] decision to leave the ownership question open 'for another day,'" because "a final decision ... would have settled the very question the court professed to leave open. Thus we cannot find that the court finally resolved the ownership question in the face of its express decision to leave it unresolved." *Id.* The court also stated that the bankruptcy court's finding of ownership was in conflict with its subsequent failure to resolve an adversary proceeding in which the identical issue was presented. *Id.*

Although it concluded that "the sale was ... not authorized by law," and that Section "363 does not apply because the sale was not of property of the estate," the Ninth Circuit did not invalidate the sale. *Id.* at 610. Instead the court concerned itself with "the disposition of the proceeds into which the Property has now been converted," remanding the case to the bankruptcy court to resolve the ownership dispute and order the disgorgement of improperly distributed assets. *Id.* at 610–11.

Were the trial court's actions in this case consistent with *Rodeo?* *Rodeo* is silent on how a court must determine whether prop-

ownership, yet that is the result the dissent would have us adopt.

erty is estate property. The facts in *Rodeo* led the Ninth Circuit to conclude that the bankruptcy court's finding of ownership with respect to the motion was "irreconcilable" with the bankruptcy court's failure to dismiss the adversary proceeding. It is unclear, however, if *Rodeo* forbids a bankruptcy court from ever making such a finding in a contested matter (as opposed to an adversary proceeding) [13] or whether *Rodeo* employs prudential principles of efficient dispute resolution to channel disputes over issues such as ownership into a single, appropriate forum.

We interpret *Rodeo* as standing for principles of efficient judicial administration. Such principles, as applied here, lead to reversal since the court's determination of disputed ownership was duplicative and parallel to the essential subject of a pending adversary proceeding.[14]

In *Rodeo*, reversal occurred because the bankruptcy court's actions were inconsistent. The court made a finding of ownership in the contested matter without carrying the consequences of that finding through to the pending adversary proceeding. Here, granting the Sale Motion—which necessarily involved a finding of ownership—without applying that finding in the Alter Ego Adversary presents the same incongruity: The trial court permitted parallel and piecemeal proceedings to continue without regard to the initial finding of ownership. This was duplicative and could promote inconsistent and ultimately inconclusive litigation as to the true ownership of the Property. As a result, it did not provide a "sound basis for holding

that the Property was property of the estate." *Id.* at 609.

Courts have long condemned duplicative and wasteful litigation. *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952). *See also* James P. George, *Parallel Litigation*, 51 BAYLOR L. REV. 769, 785–89 (1999). Other than *Rodeo*, we have not found a case in which one court entertained the same substantive issue involving the same parties in two separate proceedings pending before it. In the analogous situation of two separate actions pending involving the same issue before two *different* courts, the Ninth Circuit has adopted a rule of comity in which the second court presented with the issue defers to the first court. *Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir.2000); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982); *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 749 (9th Cir.1980).

The policies behind the comity rule—promotion of efficient judicial administration and avoidance of the risk of inconsistent results, *Pacesetter*, 678 F.2d at 96—apply with even more force when only one court is involved, and when consolidation of the actions is expressly permitted. *See* BANKR. RULE 7042 (permitting a court to consolidate different actions if they present common questions of law or fact); 9014 (making, among other things, Rule 7042 applicable to contested matters).

Although *Rodeo* does not refer to the rule of comity, it does effectively extend the rule's sound policies. In observing

---

**13.** *See* BANKR. R. 7001(2) (providing that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding).

**14.** Because both this case and *Rodeo* involve sale motions under Section 363 made during the pendency of an adversary proceeding con-

testing ownership, we do not decide whether a contested matter brought in the absence of such an adversary proceeding can provide a "sound basis for holding that the [property sought to be sold is] property of the estate." *Rodeo*, 362 F.3d at 609.

that the trial court divided the task of determining ownership into two proceedings without giving finality to either, *Rodeo* highlighted the same concerns expressed in the cases cited above regarding parallel and piecemeal litigation. It then applied those policies by reversing based on the lower court's lack of a "sound basis" for proceeding in parallel on the ownership issue.

■ Against this background, *Rodeo* stands for the proposition that courts must seek to promote consistent and unfragmented decisionmaking when faced with the need to determine predicate issues such as property ownership in the Section 363 context. The trial court here did not adhere to this principle when it split the litigation over the ownership of the Property, and then purported to make a finding about ownership in one piece of the litigation that was not binding in any way in the Alter Ego Adversary. As a result, the bankruptcy court's factual determination in this case that Popp had "some interest in the property" effectively resolved nothing. Therefore, it cannot be given any dispositive force.

*Rodeo* thus mandates reversal. In addition, reversal is consistent with the equities of the underlying litigation. The Trustee, for example, has argued that the $22,500 offer she received was the highest and best price for the Property, and buttressed that assertion with evidence that she had marketed the Property for more than eighteen months. This admission indicates that, as estate representative, she had intended to sell property titled in another for more than a year and a half. Nonetheless, she declined or neglected to bring the issue of ownership to a head in the pending Alter Ego Adversary. If the facts were so clear that they could be decided in a separate contested matter, the Trustee could have sought a similar determination by way of summary judgment in the adversary proceeding or could have requested an expedited trial on the issue.

Moreover, the contract between the buyer and the Trustee indicates that each knew of the disputed ownership claims, and they jointly allocated to Redding the risk that the estate would not ultimately be found to own the Property. In Sections 7 and 8 of the purchase agreement, the Trustee disclaimed all warranties of title, so Redding knowingly took the entire risk that the estate did not have good title—or, for that matter, *any* title.[15]

To avoid pernicious piecemeal litigation, the bankruptcy court should have insisted that the Trustee finish determining ownership before stepping outside the Alter Ego Adversary to sell the Property. Because the trial court did not, we must reverse the determination that the estate had "some ownership" in the Property, and thus reverse the order authorizing the Property's sale under Section 363.

### Appropriate Remedy

Despite the invalidity of the Sale Order, the Trustee asserts that Darby's appeal is moot, either under the general mootness rule, the doctrine of equitable mootness, or under Section 363(m), because Darby did not request a stay and the sale had already been consummated to a good faith purchaser.

■ The Constitution limits the power of the federal courts to "the adjudication of actual cases and live controversies." *Luckie v. EPA,* 752 F.2d 454, 457 (9th

---

15. The clearest example of this risk shifting is found in Section 8.02 of the Addendum to the Purchase Agreement, which states that "[t]itle to the Property shall be transferred to the Buyer by a bankruptcy trustee's deed without warranties, representations or recourse of any kind."

Cir.1985); U.S. Const. art. III, § 2, cl. 1. The mootness doctrine, derived from this rule, prohibits a court from hearing an appeal "when ... an event occurs which renders it impossible for [the] court ... to grant [the plaintiff] any effectual relief whatsoever." *Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 797 (9th Cir.1981) (quoting *Mills v. Green*, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895)).

■■■ Our determination that Section 363 does not apply here, however, does not permit us to simply reverse. We must consider equitable mootness generally.[16] In bankruptcy, courts apply several variations of the equitable mootness rule. The first applies when "events ... occur that make it impossible for the appellate court to fashion effective relief." *Focus Media, Inc. v. Nat'l Broad. Co., Inc. (In re Focus Media, Inc.)*, 378 F.3d 916, 922 (9th Cir. 2004) (citing *Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 187 (9th Cir.1977)). Generally, a consummated sale to a third party who is not a party to the appeal falls within this category. *Focus Media*, 378 F.3d at 922. This is not, however, an ironclad rule. *Id.* at 923 ("However, '[t]he party asserting mootness has a heavy burden to establish that there is no effective relief remaining for the court to provide.' ").

■■■ A second, related variation of the mootness rule, the equitable mootness doctrine, applies when appellants " 'have failed and neglected diligently to pursue

their available remedies to obtain a stay' " and circumstances have changed so as to " 'render it inequitable to consider the merits of the appeal.' " *Focus Media*, 378 F.3d at 923 (citation omitted). Courts have applied the doctrine of equitable mootness when the appellant has failed to obtain a stay and the ensuing transactions are too "complex and difficult to unwind." *Lowenschuss v. Selnick (In re Lowenschuss)*, 170 F.3d 923, 933 (9th Cir.1999) (comparing *In re Spirtos*, 992 F.2d 1004, 1007 (9th Cir.1993) with *In re Roberts Farms, Inc.*, 652 F.2d 793 (9th Cir.1981) and *In re Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir.1977)).

■■■ The Ninth Circuit has acknowledged that tension has developed within mootness jurisprudence between these two "alternative rationales." *See, e.g., Onouli–Kona Land Co. v. Estate of Richards (In re Onouli–Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir.1988). Under the first rationale, courts look solely at their ability to fashion an effective remedy. *Id.* Under the second, courts go beyond remedial considerations and consider the consequences of the remedy and the number of third parties who have changed their position in reliance on the order that is being appealed. Courts have described this rationale as the need to assure "finality," and under this rationale the failure of an appellant to obtain a stay receives great weight. *Id.*

■■■ Here, although Redding is not a party to this appeal, this Court is still able

---

**16.** Section 363(m) codifies the mootness doctrine as it applies to property sales governed by that section. In *Rodeo*, however, the Ninth Circuit ruled that none of the salutary and protective provisions of Section 363(m) apply without a dispositive and final finding that the estate owned what it purported to sell. Because the purported consummation of the sale here was also without authority under Section 363, Section 363(m) is also not available.

We agree with the dissent that, if Section 363 applied, the case would likely be moot for failure to obtain a stay pending appeal. But that consequence shows the need to distinguish cases such as this—where the predicate showings for application of Section 363 have not been made—and those cases in which the estate acts properly and does not attempt to expropriate nonestate property.

to afford Darby effective relief. One consequence of this Court's finding that the Sale Order was not authorized by Section 363 is that Section 363(f) is not available to permit the sale of the Property free of Darby's lien. Thus, while the sale itself may not be rescinded, the Court may vacate the transfer of Darby's lien to the sale proceeds, and hold that it remains attached to the Property. *See Beneficial California, Inc. v. Villar (In re Villar)*, 317 B.R. 88 (9th Cir. BAP 2004) (lien reinstated on property that may have been sold even though purchaser was not a party to the appeal).

As a result, although Darby failed to request a stay of the sale, we conclude that the equitable mootness doctrine does not apply. The transaction is not "complex" or "difficult to unwind." *Lowenschuss*, 170 F.3d at 933. There is only one third party who may have relied on the Sale Order, rather than a large number as in a reorganization. *See, e.g., Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 797–98 (9th Cir.1981) Additionally, the third party buyer signed a sale agreement in which she explicitly assumed the risk that the estate would have nothing to sell.

To be candid, many, many cases from this circuit could be read to require a stay pending appeal as a condition of avoiding the consequences of equitable mootness. *See, e.g., Ewell v. Diebert (In re Ewell)*, 958 F.2d 276 (9th Cir.1992) (appeal held moot because transfer of property had already occurred as of time appellant sought stay pending appeal); *Mann v. Alexander Dawson, Inc. (In re Mann)*, 907 F.2d 923, 925 (9th Cir.1990) (appeal of order lifting automatic stay held moot for failure to seek stay pending appeal; secured creditor purchased property by credit bid); *Kaonohi Ohana, Ltd. v. Sutherland (In re Kaonohi Ohana, Ltd.)*, 873 F.2d 1302, 1306 (9th Cir.1989) (appeal of District Court order affirming Bankruptcy Court order ruling that contract for sale of land was executory and could be rejected by corporate debtor held moot in absence of stay pending appeal, where debtor completed sale to third party prior to disposition by Court of Appeals); *BC Brickyard Assocs., Ltd. v. Ernst Home Ctr., Inc. (In re Ernst Home Ctr., Inc.)*, 221 B.R. 243, 247 (9th Cir. BAP 1998) (transfer of real property after denial of Landlord's Committee's motion for a stay pending appeal).

Such a result, however, is not yet a rule. The relatively simple transaction present here, in which a buyer expressly took the risk of receiving less than marketable title, coupled with the issues raised—the sale of property and the stripping of a creditor's lien from that property without a proper determination of its ownership—compel reversal notwithstanding arguments of mootness.

We therefore REVERSE the decision below, and REMAND to the bankruptcy court for proceedings not inconsistent with this opinion.

MARLAR, Bankruptcy Judge, dissenting.

I respectfully disagree with my colleagues, and would DISMISS either for lack of standing to appeal or for mootness. Although the majority opinion is well-written and scholarly, I believe that it is distracted by a tangential issue, that of who owns the property. The crux of this appeal, in my view, is whether Darby has standing to appeal the validity of the sale on the grounds that the property was not property of the estate, which is the only issue he has raised.

Darby's interest in the property sold by the trustee is that of a lienholder. The outcome of an ownership controversy is of no import to a lienholder; its interest is

secured by the value of its collateral regardless of who owns the property. In this case, the value of Darby's lien was only as great as the value of his collateral which was administered by the chapter 7 trustee. *See* 11 U.S.C. § 506(a).

Therefore, a lienholder has no basis to challenge a sale on grounds that someone other than the debtor's estate owns it. Because Darby has no pecuniary stake in any dispute as to who the true owner of his collateral may be, his appeal on that ground fails for lack of standing. *See In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir.1999) (appellant's interests must be directly affected by a bankruptcy court order).

The majority relies on *P.R.T.C.* to support its conclusion that a creditor has a pecuniary interest in a bankruptcy court's order transferring assets of the estate. *See id.* at 778. This broad statement is a true one, as a chapter 7 estate's ultimate beneficiaries are a debtor's creditors. But that fact does not confer standing on all estate issues. *See* 11 U.S.C. § 323 (trustee is the estate's representative).

Indeed, in *P.R.T.C.*, the Ninth Circuit in making that statement cited a case involving competing creditor claims to a limited fund. *See In re Int'l Envtl. Dynamics, Inc.*, 718 F.2d 322, 326 (9th Cir.1983). Such facts, and those of *P.R.T.C.* are distinguishable.

In *P.R.T.C.*, there was no bankruptcy sale, no lienholder, and no lien attached to the sale proceeds. There, the estate lacked sufficient funds to pursue various avoidance actions and other lawsuits, which were the estate's only assets. Therefore, the litigation rights were assigned to the largest creditor, and another creditor, who was a potential defendant, objected. The Ninth Circuit held that the objecting creditor had standing to object to the transfer because such transfer left

the bankruptcy estate without any other significant assets. *P.R.T.C.*, 177 F.3d at 778.

In contrast, here, the real property asset has simply been transformed into cash proceeds, to which Darby's lien attached. Furthermore, in this case, the parties who are debating ownership are not parties to this appeal. Thus, they have waived any *Rodeo Canon* arguments, and § 363 applies.

It is precisely because Darby, as a lienholder, is only entitled to challenge the sale on one of the specific grounds of § 363(f) that his arguments surrounding ownership ring hollow. Even though, in bankruptcy court, Darby objected that the sale price was inadequate to fully pay his lien (§ 363(f)(3)), he has not raised any § 363(f)(1)-(f)(5) challenges to the sale in this appeal. If he had done so, he might have fair game for an appellate argument. Instead, he has waived any § 363(f) challenges. *See Laboa v. Calderon*, 224 F.3d 972, 981 n. 6 (9th Cir.2000) (appellate court ordinarily will not consider arguments not raised in appellant's opening brief). Instead, his only appellate issue concerns who owns the property, and his interest is not claimed to be that of an owner.

Turning to the value side of the coin, a secured creditor's lien attaches to collateral only to the extent of the collateral's value. Any debt in excess of the collateral's value is unsecured. *See* 11 U.S.C. § 506(a). Thus, by waiving the § 363(f)(3) argument that the property was being undersold, Darby cannot complain that his lien on land was transformed into a lien on cash. A lienholder has no pecuniary interest in its collateral except as may be necessary to pay the debt which is secured by it. When collateral is *sold*, and a creditor's lien is transferred to cash, the creditor is one step closer to what it bargained for—

repayment—and has no complaint that it was deprived of its right to foreclose. *Cf. Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (refusing chapter 7 debtor's attempt, prior to foreclosure, to strip down a lien on real property to the value of the collateral, pursuant to § 502(d), because a chapter 7 creditor's lien "stays with the real property until the foreclosure").

Eventually, the validity, priority and extent of the Darby lien, if the trustee disputes it, will be tested in the crucible of an adversary proceeding. *See* Fed. R. Bankr.P. 7001(2). If Darby wins, he will presumably be paid the sale proceeds.

Finally, a word addressed to the majority's analogy to § 1111(b), as a method to protect lienholders. This section is simply not applicable to chapter 7, by analogy or otherwise. *See* § 103(g) (making subchapter I of chapter 11 applicable only in a chapter 11 case, with the exception of § 901(a)).

Section 1111(b) has a sound policy reason for appearing in the reorganization chapter that does not apply at all to liquidations. Section 1111(b) applies where a debtor seeks to *retain* secured real property, and at the same time prevents that debtor from valuing the collateral for a sum less than the secured debt without giving the creditor a unilateral option to elect to be treated as if it were fully secured. The purpose is to preserve the "upside" appreciation for a creditor who is deprived of its immediate right to foreclose while the debtor continues to use the property. Section 1111(b) thus shifts future appreciation to the creditor's side of the equation. *See In re Tuma*, 916 F.2d 488, 491 (9th Cir.1990). Those policy reasons are simply inapplicable when the goal is liquidation in a chapter 7 proceeding. *See, e.g.,* § 704(1) (trustee shall collect and reduce the property of the estate to money as quickly as possible).

In addition, the § 1111(b) election option explicitly excepts any nonrecourse holder whose secured property is sold pursuant to § 363 or in a reorganization plan. *See* 11 U.S.C. § 1111(b)(1)(A)(ii). The reason for this is that the secured party has a right to bid the full amount of its secured claim at any bankruptcy sale of its collateral. *See In re Tampa Bay Assocs., Ltd.*, 864 F.2d 47, 50 (5th Cir.1989) (citing 124 Cong. Rec. H11103–04 (daily ed. Sept. 28, 1978, at 32407)); 11 U.S.C. § 363(k).

In summation, Darby has no standing to appeal the sale order on the basis of ownership. He has no dog in that fight.

Alternatively, I conclude that this appeal is moot. Section 363(m) speaks to this subject loud and clear, and the majority's efforts to slip-slide around its mandate is, in my opinion, tortured. What § 363(m) means to Darby (assuming that he had standing) is this: had he wished to stop the sale, he could have applied for a stay pending appeal, and if the court required it, posted a bond equal to the sale price, and could then have had his appeal heard on the merits. But he never asked for a stay. Therefore, § 363(m) describes the unequivocal consequence:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Because the sale has now closed, Darby's appeal is moot and should be dismissed.

For these reasons, I respectfully dissent, and would DISMISS.