**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DONNA LEE HERNANDEZ,<br>　　　　　Debtor. | BAP No. SC-23-1016-BCF<br><br>Bk. No. 21-03659-MM7 |
| JORGE I. HERNANDEZ,<br>　　　　　Appellant,<br>v.<br>DONNA LEE HERNANDEZ; GERALD<br>H. DAVIS, Chapter 7 Trustee; RONALD<br>E. STATDMUELLER, Chapter 7 Trustee;<br>J.W. MITCHELL, INC.; JERALD W.<br>MITCHELL,<br>　　　　　Appellees. | **MEMORANDUM∗** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Margaret M. Mann, Bankruptcy Judge, Presiding

Before: BRAND, CORBIT, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Jorge Hernandez ("Jorge")[1] appeals an order granting the

trustee's motion to compromise claims and sell estate assets. We conclude that

---

∗ This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] We refer to Mr. Hernandez as Jorge and Ms. Hernandez as Donna to avoid any confusion. No disrespect is intended.

the bankruptcy court did not abuse its discretion in approving the settlement and sale, and we AFFIRM.

## FACTS

Jorge and his former wife, Donna, each filed a chapter 7[2] bankruptcy case on September 15, 2021. Jorge and Donna were legally separated when they filed their individual cases; they are now divorced. Ronald Stadtmueller ("Trustee") is the trustee of the consolidated bankruptcy estates. On the other side of the challenged settlement and sale are creditors J.W. Mitchell, Inc. and Jerald W. Mitchell ("Mitchell Parties"). Jorge was previously legal counsel for the Mitchell Parties.

### A. The proposed settlement and sale

Trustee filed a Motion for Order Approving Two Separate Agreements to Purchase Assets and Compromise Claims ("Motion"). The agreements were referred to as "Agreement A" and "Agreement B". Our focus is on Agreement A, which is the only agreement that the bankruptcy court approved after some modifications.

Initially, Agreement A involved the sale of four business entities owned by Jorge and/or Donna and the settlement and sale of several matters pending in the state court involving the Mitchell Parties or related entities. After some modifications on the record at a second hearing, Agreement A was pared down to the sale of only one business entity owned by Jorge – Nucco, LLC

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

("Nucco") – and the settlement and sale of three matters – *Nucco, LLC v. Non-Newtonian Management, LLC* (the "Nucco Action") and a related appeal (the "Nucco Appeal"), and *J.W. Mitchell Inc. et al. v. Non-Newtonian Management, LLC et al.* (the "Collection Action").

- **Nucco**

When Trustee sought approval of Agreement A, Jorge held a 100% membership interest in Nucco, which he had valued at $0 in his schedules. Nucco was listed as suspended by the California Secretary of State and Franchise Tax Board and was not in good standing with either state entity. Nucco's only asset was a 32% ownership interest (disputed as to percentage) in Non-Newtonian Management, LLC ("NNM").

- **Nucco Action and Nucco Appeal**

The Nucco Action was a petition for dissolution of NNM filed in 2017, through Jorge, who had recently resigned as NNM's legal counsel. The petition was dismissed on summary judgment filed by NNM, after NNM filed a cross-complaint against Nucco, Jorge, and others asserting 21 causes of action, including a claim against Jorge for legal malpractice. Nucco, derivatively on behalf of NNM, then filed a cross-complaint for a variety of claims which the state court dismissed. The Nucco Appeal, filed by Jorge, involved the denial of a motion to disqualify counsel for NNM.

- **Collection Action**

The Mitchell Parties filed the Collection Action against Jorge, NNM, and others in 2018. It involved the default on some promissory notes and various

tort claims. The claims made in that action were generally now asserted by the Mitchell Parties in a nondischargeability complaint filed against Jorge.

In Agreement A, Trustee would sell, free and clear of all interests, all of the estate's right, title, and interest in the above assets and claims to the Mitchell Parties in exchange for $50,000 and a mutual release of all claims, except the Mitchell Parties' claims against the estate which were based on the Collection Action and totaled approximately $3.75 million. The Mitchell Parties agreed to subordinate their claims to the claims of other creditors if there were any right to a distribution.

Trustee argued that the sale under § 363(b)(1) was negotiated for six months at arm's-length and in good faith, was in the best interest of the estate, was fair and reasonable, and that based upon his business judgment should be approved. As for the Nucco Action, Nucco Appeal, and Collection Action, Trustee determined that they were of inconsequential value because the high cost to litigate the matters and collect any judgment would diminish any return to creditors. As for Nucco, Trustee argued that the entity was not lucrative given its involvement in litigation and the high risk of an adverse judgment.

Trustee argued that the settlement of the Nucco Action, Nucco Appeal, and Collection Action under Rule 9019 was fair and equitable and in the best interest of creditors and the estate. In evaluating these litigation matters under the *A & C Properties* factors, Trustee determined that the likelihood of success was very low, while litigation costs would be extremely high. He also

4

considered the difficulties of collection if he was successful, the complexity and expense of litigation if each matter was pursued, and the inconvenience and delay with litigation. Trustee said his accountant concluded that there would be little to no taxes owed resulting from Agreement A (or B).

Jorge and Donna objected to the Motion, but nearly all of their objections went to the later-withdrawn Agreement B. Jorge and Donna did not challenge the sale of Nucco specifically or the settlement and sale of the Nucco Action, Nucco Appeal, and Collection Action, nor did they challenge the $50,000 consideration being paid.

**B.    The court's tentative ruling, the parties' responses, and the court's final ruling**

The bankruptcy court's tentative ruling on Trustee's Motion concerned primarily the later-withdrawn Agreement B. For Agreement A, the court found that Trustee failed to explain the impact it had on creditors, that he failed to value the litigation resolved on a per lawsuit basis, and that his analysis under *A & C Properties* was lacking, particularly the likelihood of success on the litigation matters compromised.

In their response to the court's tentative ruling, the Mitchell Parties explained that, in the Nucco Action, Nucco's affirmative claims had been dismissed and Jorge was only a cross-defendant with substantial potential liability. Jorge also did not file any affirmative claims in the Collection Action; there was only liability for the estate as evidenced by the Mitchell Parties' proofs of claims. As for valuing these litigation matters, the Mitchell Parties argued that they had no value to third parties and would be abandoned by

5

Trustee if Agreement A was not approved. The same was true for the Nucco entity, which additionally was not in good standing with state entities. The Mitchell Parties argued that Agreement A provided the estate with $50,000 that would otherwise not be available for distribution.

In his response, Trustee explained that there would be a "carve out" for unsecured creditors should administrative expenses exceed what was being paid to the estate, but he did not provide an estimate as to what the expenses were to date. In response to the court's concern about his cursory analysis of the first *A & C Properties* factor for the litigation matters, Trustee elaborated on the probability of success for matters that were either eliminated from Agreement A at the second hearing or were part of Agreement B. Trustee again maintained that there would be minimal tax consequences for selling Nucco (and the other entities as initially proposed).

After a first hearing and a failed settlement attempt, the bankruptcy court held the second and final hearing on Trustee's Motion. As the court discussed issues that it said still prevented its approval of the Motion, the Mitchell Parties stated that, for Agreement A, they were willing to take fewer assets – only Nucco, the Nucco Action, the Nucco Appeal, and the Collection Action – for the same price of $50,000. After a brief recess and a colloquy with the court about what assets and claims were still in Agreement A, Trustee informed the court that his accountant had filed a declaration during the recess stating her opinion that the agreements would not impose any tax consequences on the estate. The court then asked Jorge about the basis for

Nucco. He responded that Nucco was created with a $1,000 personal contribution. Jorge conceded that, given the litigation with NNM, Nucco had little value. However, he argued that, if the Mitchell Parties were dismissing the litigation, Nucco could be worth "a few million dollars." The court responded that it was not interested in hypothetical values or what the Mitchell Parties' tax consequences might be. Based on the evidence, particularly the accountant's testimony that there would be no tax consequences to the estate, the court approved Agreement A and overruled Jorge's objection.

The court rejected both orders submitted by Trustee and Jorge and Donna, and approved a slightly modified version of the order proposed by Jorge and Donna ("Modified Order"). This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We discuss our jurisdiction under 28 U.S.C. § 158 below.

## ISSUES

1.    Does Jorge have standing to challenge the Modified Order?

2.    If so, did the bankruptcy court abuse its discretion in approving Agreement A?

## STANDARDS OF REVIEW

While standing to appeal is generally a legal issue we review de novo, whether an appellant is a "person aggrieved" by the order appealed is a question of fact we review in the first instance. *See Palmdale Hills Prop., LLC v.*

7

*Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011).

We review approval of both a Rule 9019 settlement agreement and a § 363 sale for an abuse of discretion. *Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872, 880 (9th Cir. BAP 2010) (§ 363 sale); *Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003) (Rule 9019 settlement). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.    Jorge has standing to challenge the Modified Order.

An appellant of a bankruptcy court order must establish both Article III standing and that it is aggrieved by the order. *Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.)*, 80 F.4th 901, 905 (9th Cir. 2023), *as amended* (citing *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443 (9th Cir. 1983)). Article III, or constitutional, standing requires the appellant to show that it has "(1) suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) the injury is fairly traceable to the defendant's conduct, and (3) the injury can be redressed by a favorable decision." *Id.* at 906 (cleaned up). The "person aggrieved" standard is a prudential rule of appellate standing. *See Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1191 (9th Cir. 2018).

"[O]nly a person aggrieved, that is, someone who is directly and adversely affected pecuniarily by a bankruptcy court's order, has standing to appeal that order." *Id.* (cleaned up). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *Id.* (citation omitted). As the appellant, it is Jorge's burden to establish standing. *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.),* 290 B.R. 718, 726 (9th Cir. BAP 2002) (citing *Bennett v. Spear,* 520 U.S. 154, 167-68 (1997)).

Generally, a chapter 7 debtor lacks standing to challenge orders affecting the assets of the estate unless there is likely to be a surplus after paying all creditors. *Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.),* 177 F.3d 774, 778 n.2 (9th Cir. 1999); *see also In re Fondiller,* 707 F.2d at 442 (an insolvent debtor lacks standing to appeal an order affecting the size of the estate because such an order does not diminish the debtor's property, increase his burdens, or detrimentally affect his rights).[3]

Jorge erroneously claims he has standing because he lost his ownership rights in Nucco with the sale of the entity to the Mitchell Parties. Jorge lost Nucco when he voluntarily filed his chapter 7 case and the interests in that entity became property of the estate. *See Farina v. Hoskins (In re Farina),* BAP

---

[3] An exception to this rule is when a debtor shows that there is property that may be the subject of an allowed exemption. *In re Rake,* 363 B.R. 146, 151 (Bankr. D. Idaho 2007). For example, if the settlement would result in proceeds that may be exempt or partially exempt, then the debtor would have a pecuniary interest in the settlement. *Id.* Jorge and Donna did not claim any of the assets sold or claims settled in Agreement A exempt. They did, however, claim an exemption in certain assets that were part of Agreement B, which unquestionably gave them standing to oppose Trustee's Motion.

No. NC-22-1071-TBF, 2022 WL 17484959, at *4 n.6 (9th Cir. BAP Dec. 7, 2022). Jorge also erroneously argues that potentially incurring significant tax consequences from selling Nucco to the Mitchell Parties gives him standing. The record reflects that there would be no tax consequence to Jorge personally with respect to the sale of Nucco, even if there is a capital gain. *See Erickson v. United States (In re Bentley)*, 916 F.2d 431, 432 (8th Cir. 1990) (the chapter 7 estate is liable for taxable gains on the sale of estate property).

Trustee argues that Jorge is not aggrieved by the Modified Order because he has no pecuniary interest in the settlement and sale; Jorge will not receive anything from the $50,000 being paid to the estate. But the relevant question is whether or not there will likely be a surplus estate. Although the Mitchell Parties have a subordinated claim for approximately $3.75 million, there are several real properties and other estate assets to be sold, and the record is not clear as to their value or what the estate could expect to receive. Trustee did not provide any figures on this issue in his brief or at oral argument. On this record, we cannot determine that Jorge lacks standing in this appeal. Therefore, we have jurisdiction under 28 U.S.C. § 158.

**B.** **The bankruptcy court did not abuse its discretion in approving Agreement A.**

**1.** **Governing law**

Because Agreement A contained the elements of both a sale and a compromise, the bankruptcy court evaluated it under § 363 and Rule 9019. Section 363(b)(1) provides that the trustee, after notice and a hearing, may sell estate assets outside of the ordinary course of business. Prepetition causes of

action are intangible items of estate property that a trustee may, and often does, sell. *Simantob v. Claims Prosecutor, LLC (In re Lahijani),* 325 B.R. 282, 287 (9th Cir. BAP 2005); § 541(a)(1); § 363(b).

For a § 363(b)(1) sale to be approved, the trustee must establish: (1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) creditors received proper notice; and (4) the sale was properly negotiated and proposed in good faith. *See Slates v. Reger (In re Slates),* BAP No. EC-12-1168-KiDJu, 2012 WL 5359489, at *11 (9th Cir. BAP Oct. 31, 2012) (citing *In re Wilde Horse Enters., Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1069 (2d Cir. 1983)). Trustee also had the burden to prove these elements. *Id.* Under § 363(f), the trustee may sell estate property free and clear of interests under certain conditions.

Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The bankruptcy court has great latitude in approving a compromise or settlement under Rule 9019. *In re Mickey Thompson Ent. Grp., Inc.,* 292 B.R. at 420. Even so, the compromise must be fair and equitable, in the best interests of the estate, and reasonable. *Id.*

In determining whether a proposed compromise is fair, reasonable, and adequate, the bankruptcy court must consider: (1) the probability of success in the litigation; (2) the difficulties, if any, of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily

11

attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). The bankruptcy court can make general findings supporting the settlement when the record clearly reflects that application of these factors weighs in favor of the settlement. *Spark Factor Design, Inc. v. Hjelmeset (In re Open Med. Inst., Inc.)*, 639 B.R. 169, 181 (9th Cir. BAP 2022), *aff'd*, No. 21-51678, 2023 WL 7123763 (9th Cir. Oct. 30, 2023), *and aff'd sub nom. Spark Factor Design, Inc. v. Kogelnik (In re Kogelnik)*, No. 22-60018, 2023 WL 7122577 (9th Cir. Oct. 30, 2023). And the reviewing court should affirm where the record supports approval of the settlement, even if the findings are general. *Id.* The court may "give weight to the opinions of the trustee, the parties, and their attorneys." *Port O'Call Inv. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).

**2. Analysis**

Jorge's opening brief consists primarily of nebulous arguments and block quotations from hearings or tentative rulings that are either irrelevant or were not part of the bankruptcy court's final ruling. Nevertheless, we review the bankruptcy court's decision to approve Agreement A, and we address what discernable arguments Jorge raises in turn.

As for the sale of Nucco, the Nucco Action, the Nucco Appeal, and the Collection Action, the bankruptcy court found that Trustee had a sound business purpose, that the sale was negotiated at arm's length and in good faith over the course of several months, and that the sale was in the best

interests of the estate – the $50,000 sale price was fair and reasonable. Although the court did not expressly find that creditors received proper notice, in reviewing the proof of service for Trustee's Motion, creditors and other interested parties received proper notice with respect to the assets ultimately sold in Agreement A.[4]

As for the settlement of the Nucco Action, Nucco Appeal, and Collection Action, the bankruptcy court made no reference to *A & C Properties* or its factors in the Modified Order, stating only that Trustee had met his burden under Rule 9019. However, in the court's December 2 tentative ruling, it expressly recognized that *A & C Properties* is the proper standard for reviewing compromises and articulated which factors Trustee had to satisfy for the court to approve the settlement.

The court found at the second hearing that settling the litigation matters for $50,000 was a "good deal" for the estate and creditors, given the complexity and cost of litigation and the lack of any contrary evidence that they had any real value. These findings are sufficient for the third and fourth *A & C Properties* factors. The record establishes that the first and second *A & C Properties* factors also weighed in favor of settlement. As for the probability of success in the litigation, Nucco's affirmative claims had been dismissed and Jorge had not asserted any affirmative claims in the Nucco Action or the

---

[4] Trustee did not brief § 363(f) or explain why the assets in Agreement A could be sold free and clear of any interests, and the bankruptcy court made no findings about it. However, Jorge does not raise any § 363(f)(1)-(5) challenges to the sale, so this issue has been waived. *See Darby v. Zimmerman (In re Popp),* 323 B.R. 260, 273 (9th Cir. BAP 2005).

Collection Action. As for the Nucco Appeal, there did not appear to be any financial gain for the estate in litigating an appeal involving the denial of a motion to disqualify counsel for NNM. Thus, "success" as to these matters meant only not losing the case and the estate's money. Further, there would be nothing to collect if Trustee was successful in any of these matters, so the second *A & C Properties* factor did not apply. In sum, the record supported approval of the settlement portion of Agreement A, and the court's lack of more specific findings is not a basis for reversible error. *In re Open Med. Inst., Inc.*, 639 B.R. at 181.

Jorge first argues that the bankruptcy court erred by approving Agreement A as modified on the record at the second hearing, and that doing so was extremely prejudicial to him. What Jorge argues is that the initial Agreement A noticed to creditors and parties in interest could only be approved (or disapproved) as-is; the court could not approve a modified version of it. No creditors objected to the initial Agreement A, which proposed selling four entities owned by Jorge and/or Donna instead of one, and selling and settling four litigation matters instead of three, for the same price of $50,000. If anyone could have complained about Trustee selling and settling fewer assets and claims for the same price, it would be the estate's creditors, although it would have been senseless for them to do so. We fail to see any, much less "extreme," prejudice to Jorge that Agreement A was modified to include less estate property for the same amount of money.

To the extent Jorge argues that the bankruptcy court erred by approving

14

Agreement A without approving Agreement B because they were part of the same motion, his argument lacks merit. While briefed together, Agreement A and Agreement B were two separate agreements involving different parties, and the approval of one was not contingent on approval of the other. Further, Jorge and Donna did not object to the court's decision to not approve Agreement B and continue the matter.

Contrary to Jorge's next argument, the court did not "make" the modifications to Agreement A, or make pen and ink changes to the Modified Order that "further altered the terms" of the initial Agreement A. Trustee and the Mitchell Parties agreed to the modifications during a recess at the second hearing and informed the court on the record as to what they were. The "pen and ink" changes the court made to the Modified Order were to the proposed wording about notice, that the sale was free and clear to only those creditors who were given "proper notice" of the Motion, and the addition of language that time could be shortened to accommodate a hearing and briefing schedule for approval of a revised Agreement B. Neither set of changes altered the terms of the initial Agreement A in the slightest.

Next, Jorge argues that Trustee failed to provide analysis of the value of the assets and claims sold in Agreement A, and so the bankruptcy court had no basis upon which to approve it. We disagree. While in its tentative ruling the court expressed its concern with Trustee's lack of valuation of the litigation matters, the court apparently was satisfied with the parties' evidence offered later in their responses to the tentative so that it could approve the sale.

15

Trustee stated in the Motion that the Nucco Action, Nucco Appeal, and Collection Action were of inconsequential value to the estate because of the high cost to litigate them and collect on any potential judgment, but the bankruptcy court rejected this as conclusory in its tentative. In his response to the tentative, Trustee did not address these litigation matters specifically, because the focus was on other assets that were either eliminated from Agreement A or were part of Agreement B. However, other evidence existed in the record supporting Trustee's position that the court could consider. In his schedules, Jorge valued his interest in Nucco at $0, and he never offered a value for the litigation matters despite having an opportunity to do so. The Mitchell Parties demonstrated that neither the litigation matters nor the Nucco entity had any value to third parties. Nucco was not in good standing with state entities and was embroiled in unsuccessful and costly litigation. Nucco's affirmative claims had been dismissed in the Nucco Action, and Jorge was only a cross-defendant in that action with potential liability. Jorge had also not asserted any affirmative claims in the Collection Action.

As for Jorge's argument respecting potential tax consequences from the sale of Nucco to the Mitchell Parties, which he argued affected Nucco's value, the bankruptcy court overruled that argument. Although Jorge continues to dispute the "basis" for Nucco, he never said what it should be or provided evidence that it mattered in the case of Nucco. Contrary to his argument, Jorge was given an opportunity to address the tax issue. It was argued repeatedly in briefing and at the two hearings on Trustee's Motion.

16

Jorge next argues that Trustee failed to establish that Agreement A provided a benefit to creditors, and so the bankruptcy court could not have made an independent decision to determine that approving it was in the best interest of creditors. We agree that Trustee was less than forthcoming about what the administrative expenses were to date and how unsecured creditors would benefit if the court approved the agreements. However, Trustee later agreed to a "carve out" for creditors so that they would receive something. Further, because the litigation matters and Nucco had no value, a payment of $50,000 for them supported a finding that Agreement A was in the best interest of creditors. These assets were neither fully encumbered nor claimed exempt, and so selling them was proper. *See In re KVN Corp.*, 514 B.R. 1, 6 (9th Cir. BAP 2014) (generally fully encumbered property should not be sold but abandoned).

Approving Agreement A and accepting an immediate cash payment of $50,000 was better for creditors than the alternative of Trustee abandoning the assets, and it meant the end of disputed state-court litigation which only exposed the estate to liability and potential loss. Additionally, the subordination of the Mitchells Parties' claims would reduce the pool of allowed unsecured claims by $3.75 million and increase the potential distribution to other creditors. *See In re Open Med. Inst., Inc.*, 639 B.R. at 176.

Finally, Jorge argues that Trustee failed to give proper notice of the Motion under Rule 9019, which must be done in accordance with Rule 2002. The bankruptcy court was initially concerned that some parties were not

17

provided proper notice of the Motion, but that was for the lienholders relating to real properties in Agreement B who were entitled to receive notice under Rules 6004(c), 7004, and 9014 because Trustee was selling the rights and claims to those properties free and clear of all liens and encumbrances under § 363(f). As for proper notice of the settlement portion of the Motion under Rule 9019, which is all Jorge contests, the other parties in the litigation matters received proper notice under Rules 9019 and 2002 and none objected.

We conclude that the bankruptcy court did not abuse its discretion in approving Agreement A as modified as a sale under § 363 and as a settlement under Rule 9019. The court permissibly found that Trustee appropriately exercised his business judgment and acted with a proper purpose, that the sale price was fair and reasonable, that the settlement was fair and equitable, and that the settlement and sale were in the best interests of the estate and creditors.

## CONCLUSION

For the reasons stated above, we AFFIRM.