
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SILVER STATE BROADCASTING, LLC;<br>GOLDEN STATE BROADCASTING,<br>LLC; MAJOR MARKET RADIO LLC,<br>　　　　Debtors. | BAP No. NV-23-1196-FCL<br><br>Bk. No. 21-14978-abl |
| SILVER STATE BROADCASTING, LLC;<br>GOLDEN STATE BROADCASTING,<br>LLC; MAJOR MARKET RADIO LLC,<br>　　　　Appellants,<br>v.<br>MICHAEL WARREN CARMEL, Chapter<br>11 Trustee,<br>　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
August Burdette Landis, Chief Bankruptcy Judge, Presiding

Before: FARIS, CORBIT, and LAFFERTY, Bankruptcy Judges.

---

　　*  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Chapter 11[1] debtors Silver State Broadcasting, LLC ("Silver State"), Golden State Broadcasting, LLC ("Golden State"), and Major Market Radio, LLC ("Major Market") (collectively, "Debtors") appeal the bankruptcy court's order approving the sale of the Debtors' radio stations and associated equipment. They contend that the court failed to first determine that the equipment was estate property. They also argue that the sale included a compromise that required a separate motion and that one of the buyers was not a good-faith purchaser.

Section 363(m) precludes the Debtors from challenging the validity of the sale. The Debtors did not seek a stay of the sale order, the sale has closed, the bankruptcy court found that the buyers were good-faith purchasers, and that finding was not clearly erroneous.

Even if the Debtors sought relief other than invalidation of the sale, the bankruptcy court did not abuse its discretion in approving the sale. We AFFIRM.

## FACTS

### A. Prepetition events

The Debtors owned and operated seven radio stations. Royce International Broadcasting Corporation ("Royce") owns the Debtors.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Edward Stolz owns Royce.

In August 2018, the United States District Court for the Central District of California entered judgment for approximately $1.2 million against Silver State, Golden State, Royce, Mr. Stolz, and others for violation of the Federal Copyright Act. In July 2020, the district court appointed a receiver in aid of collection of the judgment.

The Debtors allege that the receiver terminated the Debtors' regular commercial radio broadcasting and allowed VCY America, Inc. ("VCY") to broadcast nonprofit religious programming. They claim that VCY operated the radio stations at a loss at the expense of the receivership estate.

The judgment debtors purportedly satisfied the original judgment but did not pay other creditors or the court-approved expenses of the receivership. Citing its inability to "trust [Mr.] Stolz's representations that he will satisfy amounts due in the future[,]" the district court refused to terminate the receivership. The Ninth Circuit affirmed. *WB Music Corp. v. Royce Int'l Broad. Corp.*, 47 F.4th 944, 953-54 (9th Cir. 2022).

**B.      The Debtors' chapter 11 bankruptcy cases**

While the receivership was pending, the Debtors filed chapter 11 bankruptcy petitions. The bankruptcy court ordered joint administration of the three cases. Their scheduled assets consisted primarily of Federal Communications Commission ("FCC") licenses; they represented that they did not own any machinery, equipment, vehicles, furniture, or fixtures.

The Debtors successfully compelled the receiver to turn over the

3

Debtors' property and provide an accounting. They alleged that, when they regained control of the radio stations, the stations had no revenue, the receiver had operated them at a significant loss, and the Debtors had to restart commercial operations with funds provided by Royce or Mr. Stolz. They also objected to VCY's proofs of claim totaling $627,366.06 for reimbursement of operating expenses and attorneys' fees and costs.

In March 2023, Michael Carmel ("Trustee") was appointed chapter 11 trustee of the Debtors' estates.

Two months later, the Debtors filed an emergency motion asserting that the receiver could not levy on certain assets and that the automatic stay extended to non-debtors Royce and Mr. Stolz. Mr. Stolz filed a declaration asserting that he owned the equipment that the Debtors' radio stations were using with his consent. The bankruptcy court determined that the automatic stay applied to the equipment and personal property used by the Debtors in the operation of the radio stations but did not extend to Royce and Mr. Stolz. We affirmed. *See Silver State Broad., LLC v. Carmel (In re Silver State Broad., LLC)*, BAP No. NV-23-1111-NFB, 2024 WL 583088 (9th Cir. BAP Feb. 13, 2024).

C.     **The sale of the station assets**

1.     **Approval of bid procedures**

Meanwhile, the Trustee took steps to sell the seven stations, including the FCC licenses and the equipment used to operate the stations. He filed a motion seeking approval of bid procedures, authorization of the

4

sale of the station assets outside of the ordinary course of business, and other related relief. The "Station Assets" for sale encompassed all of the Debtors' interests in tangible and intangible assets used in the operation of the radio stations, including "all of Seller's equipment, transmitters, antennas, cables, towers, and other tangible personal property of every kind and description that are used or held for use in the transmission systems of the Stations[.]" The attached asset purchase agreements included a list of the "Tangible Personal Property" for each station.

The Trustee proposed bid procedures that identified VCY as a stalking horse bidder for five of the seven stations. The proposed purchase price for the five stations was $4.5 million. VCY agreed to discount its filed unsecured claims, and the Trustee agreed to withdraw the Debtors' objection to those claims.

The Trustee requested a determination that the prevailing bidders purchased the Station Assets in good faith and were entitled to the protections of § 363(m). The Debtors sought a continuance of the hearing on the Trustee's motion but did not substantively object to the requested relief or VCY's stalking horse bid. After a hearing, the bankruptcy court approved the bid procedures.

### 2. The auction sale

The Trustee held an in-court auction of the Station Assets. At the end of the auction, VCY offered the highest bid for four of the five stations for which it had initially bid, a second bidder offered a higher price for one of

those five stations, and a third party bid for the sixth and seventh stations. When VCY was outbid for one of the five stations for which it had initially bid, it withdrew its offer to reduce its claim, and the Trustee stated that VCY's claim would be allowed in full.

At the conclusion of the auction, the bankruptcy court questioned representatives for the prevailing bidders and approved the bids totaling approximately $6.346 million.

### 3. The Trustee's motion to approve the sale

A few weeks later, the court held a hearing on the Trustee's request for authorization of the sale of the Station Assets ("Sale Motion"). The Trustee filed a supporting declaration in which he stated that the sale "constitutes the highest or otherwise best offers for the Station Assets and provides fair and reasonable consideration for the Station Assets" and "provide[s] Debtors' estates with reasonably equivalent value and fair consideration . . . ."

As to the Tangible Personal Property, the Trustee stated that Mr. Stolz "has contended that he or Royce . . . has an ownership interest in some of the Stations' equipment while admitting that the Debtors have a possessory interest." The Trustee rejected this position and stated that his investigation indicated that the Debtors solely owned the station equipment. He detailed Mr. Stolz's failure to produce any evidence to corroborate his claim that he owned the equipment and concluded that the "Debtors have always utilized the Stations' equipment (a point Mr. Stolz

6

and Royce appear to concede) and that the Stations' equipment belongs to the Debtors."

Harris Law Practice, LLC ("Harris Law"), which had previously represented the Debtors and asserted an administrative claim, opposed the proposed sale. It argued that the bankruptcy court could not approve a sale of the Tangible Personal Property without first determining that it is property of the estate. It also challenged what it described as the full allowance of VCY's $627,366.06 claim without prior adjudication and liquidation by the court. Finally, Harris Law argued that the bankruptcy court should not confirm VCY as a good-faith purchaser without subjecting VCY to scrutiny. The Debtors joined in Harris Law's opposition and filed their own opposition, arguing that the Trustee had "made no effort to reorganize the Debtors."

In his reply, the Trustee emphasized that the Trustee could sell the Tangible Personal Property pursuant to § 363(f)(4): Mr. Stolz's claim to the Tangible Personal Property was subject to a bona fide dispute.

The Trustee offered evidence that the Debtors owned the Tangible Personal Property, including: (1) an asset purchase agreement documenting Golden State's acquisition of one of the stations, which included "all assets owned or held by Sellers that are used or useful in the operation of the Station," including all "Tangible Personal Property," (2) an application to assign the FCC licenses and "all of the broadcasting assets" of another of the stations and its translators to Major Market, (3) an asset

7

purchase agreement whereby Silver State acquired two of the stations and associated "Tangible Personal Property," and (4) a verified complaint signed by Mr. Stolz in Nevada district court in which Silver State alleged that certain equipment is Silver State's property.

The Trustee argued that the bankruptcy court could approve the sale without commencing an adversary proceeding. He contended that Rule 7001(2) is only implicated in the determination of the validity, priority, or extent of an interest in property, and he was seeking no such relief.

### 4. The order approving the sale

At the conclusion of the hearing, the bankruptcy court made a detailed oral ruling granting the Sale Motion and approving the sale.

The bankruptcy court stated that it was satisfied that the Trustee had established that Mr. Stolz's alleged ownership of the Tangible Personal Property was subject to a bona fide dispute.

The bankruptcy court held that the Trustee had satisfied the standard for approval of a sale under § 363(b)(1). It determined that the Trustee had articulated a sound business justification for the sale because the sale would allow the Trustee to make significant distributions to creditors.

Next, the bankruptcy court found that the sale price – which was nearly $1.6 million greater than the original stalking horse bid – was fair and reasonable. It also found that the bid procedures were fair and reasonable and that the Trustee had adequately marketed the assets for sale.

The court further held that the sale would be free and clear of claims and interests under § 363(f)(4) and that the sale protected Mr. Stolz's interests because any interest he might have would attach to the sale proceeds.

The bankruptcy court found that the buyers acted in good faith under § 363(m). It recounted that the successful bidders had satisfactorily answered the court's questions at the conclusion of the auction. It found that the sale process resulted in obtaining a fair value of the assets for the benefit of the estate, that there was no evidence that any of the successful bidders had engaged in fraud or collusion, and that no bidder gained a grossly unfair advantage over other bidders.

The bankruptcy court entered a written order ("Sale Order") incorporating its findings and conclusions stated on the record at the hearing. It specifically found that the prevailing bidders had "proceeded in good faith in all respects in connection with this proceeding, and each Prevailing Bidder is a 'good faith purchaser' within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby."

A few days later, the Trustee filed a stipulation withdrawing the Debtors' objection to VCY's proofs of claim.

The Debtors appealed from the Sale Order. They did not seek a stay of the Sale Order pending appeal.

## D. Post-appeal events

The sales of the Station Assets closed on various dates between February 1 and May 8, 2024. The bankruptcy court confirmed the Debtors' chapter 11 plans in late July 2024.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(N). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES[2]

(1) Whether the prevailing bidders were good-faith purchasers protected by § 363(m).

(2) Whether the bankruptcy court abused its discretion in approving the sale without adjudicating ownership of the Tangible Personal Property.

(3) Whether the bankruptcy court abused its discretion in approving the sale without requiring a motion to compromise under Rule 9019.

## STANDARDS OF REVIEW

We review for an abuse of discretion the bankruptcy court's decision to approve a sale of estate property under § 363. *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 287 (9th Cir. BAP 2005). To determine whether the bankruptcy court has abused its discretion, we

---

[2] In their opening brief, the Debtors identify three additional issues on appeal. But the Debtors did not substantively argue any of these issues in their opening brief, so they have abandoned those issues. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc).

We review for clear error the bankruptcy court's finding of good faith. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002). Similarly, the question "whether there is a 'bona fide dispute' . . . is essentially a factual inquiry" requiring the "clearly erroneous standard of review." *Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir. 2002). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

## DISCUSSION

### A. The prevailing bidders are entitled to the protections of § 363(m).

The Trustee asserts that this appeal is statutorily moot under § 363(m) because the bankruptcy court determined that the successful bidders were good-faith purchasers, the Debtors did not seek a stay of the Sale Order pending appeal, and the sale has closed. Conversely, the

11

Debtors argue that VCY was not a good-faith purchaser. We hold that the record supported the bankruptcy court's findings regarding VCY's good faith, so we cannot undo the sale.

Section 363(b)(1) permits a bankruptcy trustee, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." Section § 363(m) provides:

> reversal or modification on appeal of an authorization under [§ 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . unless such authorization and such sale or lease were stayed pending appeal.

*See Paulman v. Gateway Venture Partners III, LP (In re Filtercorp, Inc.)*, 163 F.3d 570, 576 (9th Cir. 1998) ("When a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal.").

The Debtors did not obtain a stay of the Sale Order pending appeal, and the sale of the Station Assets has closed. The only disputed issue is whether VCY is a good-faith purchaser. (The Debtors have never challenged the good faith of the other two bidders.)

The Debtors contend that the bankruptcy court and the Trustee needed to subject VCY to "some reasonable scrutiny." They recount VCY's business dealings with the receiver and Trustee, which they claim are "relevant here because they establish a relationship that does not show a

12

good faith bargaining process entitling VCY to protections under Section 363(m)."

A good faith purchaser is "one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). "Although the Bankruptcy Code and rules do not define good faith, courts have indicated that a lack of good faith is shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Sw. Prods., Inc. v. Durkin (In re Sw. Prods., Inc.)*, 144 B.R. 100, 103 (9th Cir. BAP 1992) (citation omitted); *see also In re Thomas*, 287 B.R. at 785. We must look past a "boilerplate 'good faith' finding" and ascertain whether the finding has "an evidentiary foundation." *Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872, 881 (9th Cir. BAP 2010).

Here, the bankruptcy court made extensive findings of VCY's good faith after carefully inquiring about the circumstances of the sale. It found that VCY "did offer value, there was no fraud, there was no collusion, that they did not take gross[ly] unfair advantage of other bidders, [and] they're entitled to a finding under Section 363(m) . . . ." It specifically found that "[t]here was no single bidder that controlled the process in connection with these auctions" and that VCY's role as a stalking horse bidder led to a significant increase in the final sale price. It found that the allegations of VCY's collusion with the receiver related to events that occurred during the receivership and did not impact the sale process. Moreover, the Debtors

13

did not object to VCY's stalking horse bid when they had the opportunity to do so in conjunction with approval of the bid procedures.

The evidence supports the bankruptcy court's findings. Regardless of what may have occurred during the receivership, the Trustee offered evidence that: he and VCY negotiated the proposed sale at arm's length and in good faith, absent any fraud and collusion; the Trustee sought competitive bids and used VCY's stalking horse bid to that end; VCY was not entirely successful in its proposed bid to purchase five stations and ultimately was the prevailing bidder for four stations; and the Trustee had taken steps to obtain the highest price possible.

Conversely, the Debtors' allegations are based on speculation and are devoid of evidentiary support. Most of their allegations concern the receivership and, in any event, the Debtors never even bestirred themselves to provide a declaration supporting their contention that VCY did not properly operate the stations during the receivership.

The Debtors cite *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288 (2023), and briefly argue that the Supreme Court instructed that an appeal is only moot if there is absolutely no relief available, regardless of the purchaser's good faith. However, although *MOAC* stated that § 363(m) does not "gover[n] a court's adjudicatory capacity" or divest an appellate court of jurisdiction, it acknowledged that § 363(m) "cloak[s] certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court

14

properly exercises jurisdiction." *Id.* at 299-300. In other words, *MOAC* stands for the proposition that § 363(m) is not "jurisdictional," but it still limits the relief that an appellate court can grant. Thus, § 363(m) plainly prevents us from undoing the sale – the only relief that the Debtors even mention.

The bankruptcy court's finding of good faith was not clearly erroneous. Therefore, § 363(m) protects VCY and the other prevailing bidders and precludes the Debtors' challenge to the validity of the sale.

**B.     The bankruptcy court did not err in approving the sale.**

Even if the Debtors sought some relief on appeal other than invalidating the sale, we would affirm. The Debtors argue that the bankruptcy court failed to determine that the Tangible Personal Property was property of the bankruptcy estate and failed to evaluate the sale as a compromise under Rule 9019. Neither of these arguments is persuasive.

**1.     The bankruptcy court did not need to determine ownership of the Tangible Personal Property prior to sale.**

The Debtors contend that § 363(b) requires that the bankruptcy court determine the ownership of the Tangible Personal Property in an adversary proceeding prior to approving the sale. Although they acknowledge that § 363(f)(4) permits a sale free of an interest that is subject to a bona fide dispute, they argue that no bona fide dispute exists.

Under § 363(b)(1), after notice and a hearing, the bankruptcy court may authorize a trustee or debtor-in-possession to sell property of the

15

estate outside of the ordinary course of business. If the trustee wishes to sell property free and clear of a competing interest, the trustee must show that one of the subsections of § 363(f) applies. Section 363(f)(4) provides that "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if – . . . (4) such interest is in bona fide dispute[.]" We have previously explained:

> The purpose of § 363(f)(4) is to permit property of the estate to be sold free and clear of interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated. Typically, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value.

*Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (9th Cir. BAP 2001) (citation omitted). Although § 363(f)(4) does not define "bona fide dispute," the Ninth Circuit has defined "bona fide dispute" in the context of § 303 as requiring the bankruptcy court to "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *In re Vortex Fishing Sys., Inc.*, 277 F.3d at 1064 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)).

To approve a sale free and clear under § 363(f)(4), the bankruptcy court must only determine that the estate had an interest in the property to

16

be sold and that any competing interest is subject to a bona fide dispute. This is exactly what the bankruptcy court did: it found that the Debtors either owned or had an enforceable property interest in the Tangible Personal Property, and it approved the sale free and clear "with all such Claims to attach to the cash proceeds received by the Debtors' estates that are ultimately attributable to the property against or in which such Claims are asserted . . . ."

The Trustee was also not required to conduct an adversary proceeding, since he did not ask the court to "determine the validity, priority, or extent of a lien or other interest in property . . . ." Rule 7001(2); *see, e.g.*, *Federico v. McGranahan (In re Federico)*, Case No. 07-21245-B-7, 2009 WL 2905855, at \*3 (E.D. Cal. Sept. 8, 2009) (rejecting the appellants' argument that Rule 7001 requires an adversary proceeding and stating that, "[i]n authorizing the sale, the Bankruptcy Court was not determining the issue of Appellants['] interest in the Property. . . . Rather, the Bankruptcy Court, based on substantial evidence, found that the Debtor shared an interest in the Property with his creditors, including Appellants").

This Panel has held that, in some circumstances, the bankruptcy court must decide ownership disputes before it authorizes a sale. In the leading case on this topic, *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260 (9th Cir. BAP 2005), Mr. Popp's bankruptcy trustee filed an adversary proceeding alleging that a company that owned a piece of land was an alter ego of the debtor and that the land was property of Mr. Popp's bankruptcy estate.

17

Before the court decided the adversary proceeding, the trustee moved for approval of a sale of the land. That motion assumed that the land was property of the estate, even though the court had not yet decided that very issue in the pending adversary proceeding. The bankruptcy court approved the sale, but this Panel reversed because the bankruptcy court had "permitted parallel and piecemeal proceedings to continue without regard to the initial finding of ownership. This was duplicative and could promote inconsistent and ultimately inconclusive litigation as to the true ownership of the Property." *Id.* at 269. "To avoid pernicious piecemeal litigation, the bankruptcy court should have insisted that the Trustee finish determining ownership before stepping outside the Alter Ego Adversary to sell the Property." *Id.* at 270.

*Popp* is inapplicable here. There was not and is not any parallel proceeding to adjudicate ownership of the Tangible Personal Property. There is no risk that the court's determination in the Sale Order that the Debtors owned the Tangible Personal Property could be inconsistent with a decision of the same issue in a parallel proceeding.

Further, the bankruptcy court determined that the Debtors owned the Tangible Personal Property or at least had a valid, enforceable interest in those assets. The bankruptcy court properly found, based on evidence provided by the Trustee, that when the Debtors acquired their respective radio stations, the sales included equipment to operate the stations and other Tangible Personal Property. The bankruptcy court also discounted

18

Mr. Stolz's conclusory and uncorroborated declaration submitted earlier in the case. These findings are not clearly erroneous. *See Richards v. Marshack (In re Richards)*, BAP Nos. CC-21-1262-SGL, CC-21-1266-SGL, 2022 WL 16754394, at *4 (9th Cir. BAP Nov. 7, 2022) (holding that *Popp* applies only when there are "**pending**" adversary proceedings challenging the estate's ownership interest and there is a "**genuine**" dispute about the estate's ownership of the property), *aff'd*, No. 22-60057, 2024 WL 2816482 (9th Cir. June 3, 2024).

Therefore, the bankruptcy court properly found that a sale was warranted under §§ 363(b)(1) and (f)(4).

## 2. The Trustee was not required to seek approval of a compromise under Rule 9019.

The Debtors also contend that the Trustee's agreement to withdraw the Debtors' objection to VCY's claims necessarily required the Trustee to seek approval of a settlement and compromise by filing a motion under Rule 9019. They further speculate that the offer to reduce the "illusory" claim discouraged other potential buyers from bidding.

It is true that the Trustee agreed to withdraw the Debtors' objection to VCY's proofs of claim. But it is also true that the Trustee determined that the objection was unsupported by any credible evidence and exercised his business judgment to withdraw the meritless objection as part of a sale transaction that benefitted the estates and their creditors. Nothing in the Code, the Rules, or common sense requires a trustee to (1) file a claim

19

objection that he thinks is meritless, (2) prosecute a claim objection filed by the debtor that the trustee thinks is meritless, or (3) file a separate Rule 9019 motion before dropping such a claim objection in connection with a court-approved sale.

Moreover, although the bankruptcy court did not separately analyze the withdrawal of the claim objection under the Rule 9019 standard, the court emphatically found that the overall transaction benefitted the estate. The bankruptcy court recognized that the Trustee's strategy enhanced the competitive bidding that resulted in an increase of nearly $1.6 million over VCY's stalking horse bid. It found that the bid procedures were fair and reasonable and that no one had objected to the procedures. Even if the Rule 9019 standard were applicable, the court's findings are sufficient.

The Debtors assert that the allowance of VCY's claim chilled the bidding at the auction because other bidders could not determine how to exceed VCY's bid. This is meritless speculation. All of the bidders, including VCY, were treated as cash bidders at all relevant times: the court did not mention the allowance of VCY's claim when it evaluated the various bids, and VCY paid its entire bid in cash and was not allowed to "credit bid" its unsecured claim. There is no evidence that the bidding was chilled; in fact, several new bidders emerged at the auction, and one of those bidders outbid VCY on one of the stations.

## CONCLUSION

The bankruptcy court did not abuse its discretion in approving the

20

Sale Motion. We AFFIRM.